**UNITED STATES of America,**
**Plaintiff,**

v.

**William Duran SPEIGHT, Rahsaan Jamar Watkins, and Trealane Lamont Bennett, Defendants.**

**No. Crim.A.2:99–00189.**

United States District Court,
S.D. West Virginia,
Charleston Division.

April 14, 2000.

Monica K. Schwartz, AUSA for Rebecca Betts, U.S. Attorney for the Southern District of West Virginia, Charleston, WV, for the government.

Carl J. Roncaglione, Jr., Charleston, WV, for William Duran Speight.

Michael Cline, Charleston, WV, for Rahsaan Jamar Watkins.

Nelson Bickley, Charleston, WV, for Trealane Lamont Bennett.

## DECISION AND ORDER

GOODWIN, District Judge.

At trial on April 11, 2000, defendants William Duran Speight and Rahsaan Jamar Watkins made a motion for Judgment of Acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The court dismissed Count Three of the Indictment which charged the defendants with possession of firearms "during and in relation to a drug trafficking offense" in alleged violation of 18 U.S.C. § 924(c)(1). The court found that Count Three was inadequate as a matter of law to charge the defendants under the "possession" prong of 18 U.S.C. § 924(c)(1), as the Indictment did not allege that the defendants possessed the firearms in question "in furtherance" of a drug trafficking crime. The court now writes to explain its ruling on this issue, and for the reasons set forth herein and as stated on the record at trial, **DENIES** the defendants' Motion for Judgment of Acquittal, but **DISMISSES** Count Three of the Indictment with respect to the two defendants.

### I.

On September 20, 1999, members of the Charleston Police Department's Street Crimes Unit received a complaint of drug activity at 1300 Roseberry Circle, apartment 606. Four plainclothes detectives went to the apartment to investigate. Detective Errol Randle knocked on the door. Defendant Speight opened the door slightly to see who was there and, upon seeing Randle, opened the door wide. Randle entered the apartment and immediately spotted bags of suspected crack cocaine on a cigar box in the middle of a dining room table. Randle identified himself as a police officer and Speight began shouting, "No! No!" The remaining officers rushed into the apartment to assist Randle.

Speight was not the only person in the apartment at the time of his arrest. Defendant Watkins was lying on a couch either asleep or watching Monday Night Football. Watkins did not initially move from his position on the couch when ordered to rise by one of the police officers, and he was observed making "stuffing" movements with his hands toward the cushions of the couch. Another defendant, Trealane Lamont Bennett, was in the kitchen cutting up crack cocaine. At trial, Bennett testified that he initially looked to see who had knocked on the door, but upon seeing Randle, returned to the kitchen. A few moments later, Bennett heard the "scuffle" between Speight and Randle, realized that something was going on, and attempted to put the crack down the disposal in the kitchen sink.

The police secured all three defendants, and an officer performed a protective sweep of the apartment. After Speight denied the officers permission to search the apartment, a warrant was obtained and the police thoroughly searched the entire apartment. A videotape made after the search memorialized the locations of many relevant items. The tape revealed several boxes of plastic sandwich bags, a police scanner, a digital scale, a mirror and razor blade "cutting set," approximately $1,600 in cash taken from clothing belonging to the defendants, identification documents, and quantities of loose and bagged rocks of cocaine base both out in the open and in the defendants' clothing. During the initial sweep, the police found the following firearms: (1) a .22 caliber handgun located in the first bedroom on top of a laptop computer; (2) a Lorcin 380 located under a cushion of a loveseat in the living room; and (3) a .357 Magnum located under the cushions of the couch where defendant Watkins was lying. During the warrant search, the police found additional crack cocaine, four boxes of ammunition, and a .25 caliber handgun in the mesh of the loveseat.

On September 28, 1999, a federal grand jury returned an Indictment against Speight, Watkins, and Bennett. The Indictment charged as follows: (1) Count One—conspiracy to possess with intent to

distribute cocaine base in violation of 21 U.S.C. § 846; (2) Count Two—possession with intent to distribute cocaine base, or in the alternative, aiding and abetting possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) Count Three—possession of a firearm "during and in connection with a drug trafficking offense," or in the alternative, aiding and abetting that offense in violation of 18 U.S.C. §§ 924(c) and 2.

Defendant Bennett pleaded guilty to Counts One and Three on December 20, 1999. Defendants Speight and Watkins elected to go to trial.

## II.

At trial, the government introduced evidence that defendants Speight and Watkins possessed the handguns in question. Trealane Bennett testified that defendant Speight had purchased the .22 caliber handgun for $40.00 and that Watkins had purchased the Lorcin 380 for $150.00. Bennett further testified that he Speight and Watkins had all handled and loaded the firearms, and that they obtained and kept the firearms for the purpose of protecting their drugs and money.

At the close of the government's evidence, counsel for the defendants moved for Judgment of Acquittal on all counts. The defendants particularly focused on the firearms charge under 18 U.S.C. § 924(c)(1). The defendants argued that the government had failed to prove the required possession. The defendants' argument was grounded in the Supreme Court's holding in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which stated that "use" of a firearm requires a showing of "active employment" of the firearm and not just the presence of the firearm at a crime scene. *Id.* at 144, 116 S.Ct. 501. For reasons stated on the record, and viewing the evidence in the light most favorable to the nonmoving party, the court denied the motions.

At the close of all evidence, each defendant renewed his motion, again placing emphasis on the government's failure to prove the firearms charge. At this point, the court noticed that Count Three of the Indictment did not charge an offense under 18 U.S.C. § 924(c)(1).

## III.

In order to be sufficient, an Indictment must "(1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 298 (4th Cir.1998) (internal quotations and citations omitted). The mere failure of the Indictment to track the precise language of a statute, standing alone, does not constitute error. *See United States v. Sutton*, 961 F.2d 476, 479 (4th Cir.1992). The remedy for an insufficient Indictment is to dismiss the charge. *See* 1 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 129 (1999); *see also Russell v. United States*, 369 U.S. 749, 769–70, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

## IV.

### A.

18 U.S.C. § 924(c)(1)(A) states in pertinent part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall in addition to the punishment of the crime provided for such crime of violence or drug trafficking crime-[receive an additional penalty].

Prior to 1998, the statute only covered individuals who used or carried a firearm during a crime. The earlier version of the statute stated:

Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall in addition to the punishment provided for such crime . . . be sentenced to [an additional penalty].

18 U.S.C. § 924(c)(1), *amended by* Pub.L. No. 98–473, 110 Stat. 3505 (1997).

### B.

In 1995, the Supreme Court decided *Bailey v. United States.* *Bailey* was a consolidated case involving two separate defendants who had been charged under the previous version of § 924(c)(1) for "use and carry" of a firearm. *Id.* at 138–39, 116 S.Ct. 501. The police stopped the first defendant for a traffic offense and arrested him after finding cocaine in the driver's compartment of the car. *Id.* at 139, 116 S.Ct. 501. The police then found a firearm inside a bag in the locked trunk of his car. *Id.* The police arrested the second defendant after police made two controlled buys from her. *Id.* at 140, 116 S.Ct. 501. After searching her apartment, the police discovered an unloaded, holstered firearm in a footlocker in a bedroom closet. *Id.* A divided *en banc* decision by the D.C. Circuit ultimately upheld both convictions, finding that it is sufficient "use" of a firearm under § 924(c) "whenever one puts or keeps the gun in a particular place from which one (or one's agent) can gain access to it if and when needed to facilitate a drug crime." *U.S. v. Bailey,* 36 F.3d 106, 115 (D.C.Cir.1994).

On appeal, the Supreme Court reversed both judgments and rejected the "accessibility and proximity test" applied by the D.C. Circuit. *Bailey,* 516 U.S. at 141, 116 S.Ct. 501. Instead, the Court adopted the definition of "use" from Judge Williams's dissent below, finding that "use" under § 924(c)(1) denoted "active employment of the firearm rather than possession with a contingent intent to use." *Id.* at 142, 145, 116 S.Ct. 501. As to the D.C. Circuit's "proximity and accessibility" standard the Court stated:

Its proximity and accessibility standard provides almost no limitation on the kind of possession that would be criminalized; in practice, nearly every possession of a firearm by a person engaged in drug trafficking would satisfy the standard, thereby erasing the line that the statutes, and the courts have tried to draw.

*Id.* at 143–44, 116 S.Ct. 501 (internal quotations and citations omitted). The Court also noted that the statute did not provide for mere possession. *Id.* at 143, 116 S.Ct. 501 ("Had Congress intended possession alone to trigger liability under § 924 it easily could have so provided.").

### C.

Congress regarded the Court's decision in *Bailey* as an "implicit invitation to clarify the statute." *Violent and Drug Trafficking Crime: The Effect of the* Bailey *Decision on Prosecution Under Section 924(c) Before the Senate Comm. on Judiciary,* 104th Cong., 1st Sess. (statement of Thomas G. Hungar) *available at* 1996 WL 531385; *see also* 143 Cong.Rec. S379–01 (daily ed. Jan. 21, 1997) (statement of Sen. Helms). Congress thereafter amended the statute to add the words "possess a firearm in furtherance of the crime." *See* Act of Nov. 13, 1998, Pub.L. No. 105–386, § 1, 112 Stat. 3469.

The legislative history of the amendment makes it patently clear that the "in furtherance" language was not added superfluously and was intended to be an element of the crime. In the report of the House Judiciary Committee submitted by Representative Henry Hyde, the Committee specifically stated:

The Committee recognizes that the distinction of "in furtherance of" and "during and in relation to" is a subtle one, and may initially prove troublesome for prosecutors. Nevertheless, the Committee believes that "in furtherance of" is a slightly higher standard, and

encompasses the "during and in relation to" language.

Both Webster's New International Dictionary and Black's Law Dictionary define "furtherance" as the "act of furthering, helping forward, promotion, advancement, or progress."

\* \* \* \* \* \*

The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

H.R.Rep. No. 105–344, 105th Cong., 1st Sess. (1997). The Department of Justice opposed the amendment and advocated an alternative proposal that substituted "possesses" for "use and carry." *Id.* In a letter from Assistant Attorney General Andrew Fois, the agency opined, "In its current form, H.R.424 would not restore the statute to its pre-*Bailey* parameters, and indeed ... it would actually narrow the post-*Bailey* scope of section 924(c)." *Id.*

■ The court notes that when a statute requires a particular activity to be "in furtherance of" any criminal activity, the courts have construed that language to be an element of the offense and not merely a vague standard for juridical guidance. *Cf. United States v. Morales–Rosales*, 838 F.2d 1359, 1361 (5th Cir.1988) (finding that indictment charging defendant with transporting illegal alien was defective because it did not charge that defendant acted willfully *in furtherance of* alien's violation of the law); *United States v. Lebovitz*, 669 F.2d 894, 898 (3rd Cir.1982) ("Use of the United States mails *in furtherance of* a scheme to defraud is an essential element of the offense charged.") (emphasis added). The Supreme Court case that dealt with the definition of the "carry" prong of § 924 is also instructive by analogy. *See Muscarello v. United States*, 524 U.S. 125, 137, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (discussing the "during and in relation to" clause as a limiting element intended to prevent the harms that could arise from overly broad application of the statute); *see also* Angela LaBuda Collins, *The Latest Amendment to 18 U.S.C. § 924(c): Congressional Reaction to The Supreme Court's Interpretation of the Statute*, 48 Cath. U.L.Rev. 1319, 1342 (1999).

■ For these reasons, the court concludes that an intended element of the crime to be charged under the possession prong of 18 U.S.C. § 924(c)(1) is that the possession of the firearm be "in furtherance of" the underlying drug trafficking or violent offense. In order to prove a defendant's guilt under the possession prong of 18 U.S.C. § 924(c)(1), the prosecution must prove beyond a reasonable doubt: (1) that the defendant committed a crime of violence or drug trafficking crime; (2) that the defendant possessed a firearm; and (3) that the firearm was possessed in furtherance of the crime committed. Because Count Three of the Indictment in this case does not allege that the firearm was possessed "in furtherance of" a drug trafficking crime but instead erroneously applies a lower standard of "during and in relation to" designated for the "use" and "carry" prongs, it fails to charge the elements of the crime as required by *Williams*.

**V.**

Accordingly, for reasons stated on the record and herein above, the court **DENIES** the defendants' motions for Judgment of Acquittal and hereby **DISMISSES** Count Three of the Indictment with respect to William Duran Speight and Rahsaan Jamar Watkins. The court will deal with the issue as it relates to Trealane Lamont Bennett later. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the

United States Attorney, the United States Probation Office, and the United States Marshal.