**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SIDNEY RONNELL IILAND,

Defendant-Appellant.

No. 00-5012

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 99-CR-20-K)

---

Submitted on the Briefs:

W. Creekmore Wallace, II, Sapulpa, Oklahoma, for Defendant-Appellant.

Stephen C. Lewis, United States Attorney, and Allen J. Litchfield, Assistant United States Attorney, for Plaintiff-Appellee.

---

Before **SEYMOUR** and **McWILLIAMS**, Circuit Judges, and **MILLS**,[*] District Judge.

---

**SEYMOUR**, Circuit Judge.

---

[*]Honorable Richard Mills, United States District Judge, United States District Court for the Central District of Illinois, sitting by designation.

Sidney Ronnell Iiland and sixteen others were named in a multicount indictment charging numerous offenses involving drug trafficking. Mr. Iiland was convicted after a jury trial of distributing various controlled substances, possessing a firearm after a former felony conviction, possessing a firearm in furtherance of a drug trafficking offense, and maintaining a location for the purpose of distributing cocaine. On appeal, Mr. Iiland asserts (1) the trial court erred in failing to suppress wiretap evidence and evidence derived therefrom; (2) the court erroneously allowed the admission of evidence discovered as a result of a stale search warrant; (3) he was prejudiced by going to trial with three other codefendants; and (4) the evidence was insufficient to sustain his conviction for possessing a firearm in furtherance of a drug trafficking crime. We affirm in part and reverse in part.

# I

## Wiretap Evidence

During the investigation of the criminal activity underlying the indictment, the district court issued wiretap orders authorizing electronic eavesdropping on the telephone at Mr. Iiland's apartment for a sixty-day period. Before trial, Mr. Iiland and other codefendants moved to suppress the audiotapes derived from these wiretaps. After a hearing on the matter, the district court held defendants

had failed to rebut the presumption that the wiretap orders were proper. Recordings of intercepted calls obtained through these wiretaps were played for the jury at trial. Mr. Iiland contends on appeal that the court committed reversible error in failing to suppress these materials. We disagree.

Electronic eavesdropping by law enforcement officials is governed by the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended. *See* 18 U.S.C. §§ 2510-22. The statute establishes a three-part procedure for obtaining a wiretap order, under which an officer must obtain administrative approval before applying to a federal judge for a wiretap, the officer must present a written application to the judge, and the judge must make certain findings and issue an order containing specified elements. *See United States v. Castillo-Garcia*, 117 F.3d 1179, 1184-85 (10th Cir. 1997). The statute contains a "necessity" requirement, under which the officer must establish and the court must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). This requirement is intended "to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). "If an application was granted

without meeting the necessity requirement, the wiretap evidence must be suppressed." *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). Mr. Iiland contends the district court erred in ruling that the necessity requirement was satisfied.[1]

> On appeal from a motion to suppress evidence obtained pursuant to a wiretap, we accept the district court's factual findings unless clearly erroneous, review questions of law *de novo*, and view the evidence in the light most favorable to the prevailing party. The question of whether the government demonstrated sufficient "necessity" . . . to support the issuance of a wiretapping order is a question of law which we review *de novo*.

---

[1] Mr. Iiland also appears to argue on appeal that the affidavits supporting the wiretap applications contained material omissions and false statements. "[A]pplication[s] and affidavit[s] for wiretap authorization are subject to the requirements of *Franks v. Delaware*, 438 U.S. 154 (1978)," which mandates the suppression of evidence obtained on the basis of an affidavit containing knowingly false information. *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). Evidence obtained because of material omission also must be suppressed. *Id.*

Mr. Iiland did not make this argument to the district court during the pretrial hearing on defendants' motion to suppress evidence resulting from the wiretaps. He challenged the admission of the wiretap evidence in his post-trial motion for new trial, but he did not do so on the ground that the orders were obtained in violation of *Franks*. Accordingly, we review the *Franks* claim only for plain error. *See* Fed. R. Crim. P. 52(b).

We may correct an error not raised at trial under Rule 52(b) only if it is "both 'obvious and substantial.'" *United States v. Nieto*, 60 F.3d 1464, 1467 (10th Cir. 1995). The errors alleged by Mr. Iiland are neither, and therefore they do not rise to plain error.

*Castillo-Garcia,* 117 F.3d at 1186 (citations omitted). A wiretap order is presumed proper and the defendant must bear the burden of overcoming this presumption. *Green*, 175 F.3d at 829-30.

> In examining necessity challenges to wiretap orders, we have repeatedly held that law enforcement officials are not required "to exhaust all other conceivable procedures before resorting to wiretapping." Consequently, we have upheld applications for wiretap orders where the application indicated: (1) several investigatory methods had been utilized prior to resort to wiretapping; (2) normal investigative techniques had been frustrated "by various problems local police were unable to overcome;" (3) increased visual surveillance would have increased the possibility of detection; and (4) potential witnesses were unwilling to testify in court because of fear of reprisal.

*Edwards*, 69 F.3d at 429-30 (citations omitted).

We have carefully reviewed the applications for the wiretaps and the supporting affidavits, as well as the transcript of the pretrial hearing on defense motions to suppress the evidence derived from the taps, and we agree with the district court that Mr. Iiland failed to rebut the presumption that the orders were proper. The district court found that several investigatory methods had been tried with little if any success, and supported this determination with specific evidence presented by the government showing that the wiretaps were necessary to develop the full scope and breadth of any conspiracy. Accordingly, the court did not err in rejecting Mr. Iiland's necessity challenge.

## II

### Search Warrants

On March 8, 1999, FBI agents obtained a warrant to search Mr. Iiland's residence and a mini storage unit he had rented. The search of the residence uncovered weapons, ammunition and scales, and the search of the storage unit revealed a substantial amount of powdered cocaine. Mr. Iiland moved to suppress the results of these searches on the ground that the information in the affidavit supporting the warrants was stale and therefore not sufficient to support a probable cause determination. The district court denied the motion to suppress, stating that adequate probable cause existed in view of the ongoing nature of the criminal activity alleged. We agree.

Upon review of the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous. *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999). The ultimate determination of reasonableness, however, "is a question of law which we review de novo, considering the totality of the circumstances." *Id.* Although we give the magistrate's probable cause determination "great deference," we will not defer "if the affidavit does not provide a substantial basis for concluding that probable cause existed." *Id.* (internal quotations omitted).

Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the

place to be searched. The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant; instead, whether the information is too stale to establish probable cause depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."

*United States v. Snow*, 919 F.2d 1458, 1459-60 (10th Cir. 1990) (citations omitted).

Mr. Iiland contends the facts recited in the affidavit supporting the search warrants at issue were too remote in time to justify a finding that probable cause existed at the time of issuance. It is true that many of the circumstances set out in the affidavit concerned activities by Mr. Iiland and codefendants that occurred in October and November of 1998, some three months before the warrant was obtained. However, the affidavit also contains facts demonstrating that the alleged drug trafficking activity was ongoing over a considerable period of time. In these circumstances the passage of time between the suspected illegal activities and issuance of the warrant diminishes in significance. *See Le*, 173 F.3d at 1266-67 ("passage of time is not of critical importance" where offense ongoing); *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir. 1986) (not stale where "repeated drug offenses at several month intervals"); *United States v. Sherman*, 576 F.2d 292, 295-96 (10th Cir. 1978) (affidavit valid where activities "continuous in nature"). In addition, the affidavit tended to show that Mr. Iiland kept the drugs he sold in the storage unit, and that he was still renting and visiting

the unit a few days before the warrant was issued. Considering the totality of the circumstances, we conclude that the information upon which probable cause was based was not impermissibly stale.

## III

## Joint Trial

Mr. Iiland argues he was denied due process when made to stand trial with three codefendants. He points out that he was not linked to the acts of his codefendants, and that most of the evidence of criminal activity presented at trial was directed to his codefendants' involvement in the drug conspiracy. Although Mr. Iiland was originally charged with conspiracy, the trial court granted his motion for acquittal on that charge before the case was submitted to the jury.

Mr. Iiland did not seek a severance prior to trial. His argument on appeal appears to be grounded on the fact that the trial court granted his motion for acquittal on the conspiracy count, but he did not move for severance or a mistrial at that time. We therefore review his claim for plain error, which must be "both 'obvious and substantial.'" *United States v. Nieto*, 60 F.3d 1464, 1467 (10th Cir. 1995) (quoting *United States v. Torres*, 53 F.3d 1129, 1141 (10th Cir. 1995)). In so doing, we bear in mind that

> [s]everance should be granted only if Defendants will be prejudiced
> by their joinder such that "'there is a serious risk that a joint trial

would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Defendants have the burden of showing prejudice.

*United States v. Williams*, 45 F.3d 1481, 1484 (10th Cir. 1995) (citation omitted); *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Mr. Iiland has failed to show obvious and substantial prejudice arising from his joint trial. He was charged with conspiracy at the start of trial, and "[i]n a conspiracy trial it is preferred that persons charged together be tried together." *Edwards*, 69 F.3d at 434 (quotation omitted). The requisite showing of prejudice arising from a joint trial is not made by a complaint that one defendant is less culpable than another, *Williams*, 45 F.3d at 1484, or by an allegation that a defendant would have a better chance of acquittal in a separate trial, *Zafiro*, 506 U.S. at 540, or by a complaint of the "spill-over" effect of damaging evidence presented against a codefendant, *Edwards*, 69 F.3d at 434. Here the trial judge minimized any possibility of prejudice by carefully instructing the jury to consider the case against each defendant separately.[2] Limiting instructions will often cure

_____

[2] The jury was instructed:

> A separate crime is charged against one or more of the Defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately. The case [against] each Defendant should be considered separately and individually. The fact that you may find one or more of the Defendants guilty or not guilty of any of the crimes charged should

(continued...)

-9-

the risk of prejudice. *See Zafiro*, 506 U.S. at 540-41; *Edwards*, 69 F.3d at 434-35. The conspiracy charge against Mr. Iiland was never submitted to the jury, and the evidence of his guilt with respect to the remaining drug-related counts was substantial. Under these circumstances, we conclude that Mr. Iiland has not shown plain error resulting from his joint trial.

## IV

### Firearm Possession

Mr. Iiland was convicted of violating 18 U.S.C. § 924(c), which prohibits use or possession of a firearm in connection with crimes of violence and drug trafficking crimes. The applicable jury instruction required the government to prove that "[d]uring and in relation to the commission of [a drug trafficking crime], the Defendant knowingly used or carried a firearm, or alternatively, that the Defendant possessed a firearm in furtherance of the commission of that crime." Supp. App., vol. II, doc 6 at 46. No evidence was introduced at trial to show that Mr. Iiland used or carried a firearm during and in relation to a drug

---

[2](...continued)
not control your verdict as to any other crime or any other Defendant. You must give separate consideration to the evidence as to each Defendant.

Supp. App., vol. II, doc. 6 at 6.

trafficking offense. He was convicted under the statute's "possession" prong, based on evidence that he was involved in drug trafficking and owned a gun that was found along with scales in his apartment. Mr. Iiland contends this evidence was insufficient to show that he possessed the firearm "in furtherance" of a drug trafficking crime and that the trial court therefore erred in denying his motion for acquittal on that charge. We agree.

The provision of section 924(c) directed to possessing a firearm in furtherance of a drug crime was added in 1998 as one of several amendments to that section promulgated in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). Although *Bailey* addressed the "use" prong of section 924(c), that opinion and the congressional response shed considerable light on the construction and application of the new provision punishing possession of a firearm in furtherance of a drug crime.

In *Bailey*, the Supreme Court struck down the circuit court's definition of "use" as a consideration of the accessibility and proximity of the weapon. *See United States v. Bailey*, 36 F.3d 106, 118 (D.C. Cir. 1994) (setting forth "accessibility and proximity" test). The Court concluded that the term "requires evidence sufficient to show an *active employment* of the firearm by the defendant." *Bailey,* 516 U.S. at 143 (emphasis in original). The Court addressed only the "use" element and left undisturbed the circuit's treatment of the other

-11-

section 924(c) requirement, that the use be "during and in relation to" a drug trafficking offense. *See Bailey*, 36 F.3d at 115-17. Relying on *Smith v. United States*, 508 U.S. 223 (1993), the circuit court had pointed out that

> the government must make two distinct showings in order to obtain a conviction under § 924(c)(1): "that the defendant 'use[d] or carrie[d] a firearm'" and "that the use or carrying was 'during and in relation to'" a predicate offense. Therefore, in determining what the proper standard should be, we must determine both what constitutes the use or carrying of a gun and in what circumstances such a use or carrying is in relation to a drug trafficking offense.

*Bailey,* 36 F.3d at 114 (citation omitted).

In *Smith*, the defendant had exchanged his gun for drugs. He conceded that his "use" of a firearm occurred "during" a drug trafficking crime, but disputed whether his use was "in relation to" the offense. *Smith*, 508 U.S. at 237. Although declining to define the precise contours of the requirement, the Court stated that the phrase "in relation to"

> at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

*Id.* at 238 (citations omitted).

As the Court pointed out in *Bailey* and *Smith,* the former section 924(c) was not intended to punish possession alone. *See id.*; *see also Bailey*, 516 U.S. at 143. The legislative history of the 1998 amendment adding "possession" to section 924(c) expressly clarified that the addition to the statute was not intended to cover every possession of a firearm by one who also is a drug trafficker. Instead,

> [t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. *The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence.* Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

H.R. REP. NO. 105-344, 1997 WL 668339, at 9 (1997) (emphasis added).

Significantly, the House Report also states Congress' view that the "in furtherance of" requirement that accompanies "possession" *is a slightly higher standard*" than the "during and in relation to" standard set out in the "use" and "carry" prongs, and therefore "encompasses the 'during and in relation to' language." *Id.* (emphasis added). Thus, if the facts do not establish that a firearm was possessed "during and in relation to" a drug crime, they will not satisfy the more stringent "in furtherance of" language. Most telling for our case, the Report states Congress' opinion that the facts in *Bailey* may not have been sufficient to sustain a conviction for possessing a firearm "in furtherance of" a drug crime under the amended statute. *Id.* Mr. Bailey was convicted under section 924(c)(1)

-13-

after police found a loaded pistol inside a locked bag in the trunk of his car and

cocaine in the car's passenger compartment.

> In that case, a prosecution expert testified at Mr. Bailey's trial that
> drug dealers frequently carry a firearm to protect themselves, as well
> as their drugs and money.  Standing on its own, this evidence may be
> insufficient to meet the "in furtherance of" test.  The government
> would have to show that the firearm located in the trunk of the car
> *advanced or promoted Mr. Bailey's drug dealing activity*.

*Id.* (emphasis added).

While this court has not yet addressed the possession element and its "in

furtherance" requirement,[3] our cases discussing the terms "use and carry,"

---

[3] It appears that only two published cases have addressed "possession" under the amended version of section 924(c).  *See United States v. Ceballos-Torres*, 218 F.3d 409 (5th Cir. 2000), *modified on denial of rehearing*, 226 F.3d 651 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 839 (2001); *United States v. Speight*, 95 F. Supp.2d 595 (S.D. W. Va. 2000).  In *Ceballos-Torres*, officers found a loaded handgun in plain view on a bed.  A subsequent search uncovered a large amount of cocaine, empty kilo wrappers, cash, an electronic scale and straws modified for sniffing narcotics.  The defendant was convicted of possessing a firearm in furtherance of his drug trafficking offense and he appealed, contending the evidence was insufficient.  *See* 218 F.3d at 411.  On appeal, the court recognized that mere presence of the weapon at the scene is not enough to convict.  The court explained that it understood the legislative history of the section 924(c) amendments

> to re-emphasize that "mere presence" is not enough.  The "mere
> presence" test is one based on generality–anytime a drug dealer
> possesses a gun, that possession is in furtherance, because drug
> dealers generally use guns to protect themselves and their drugs.
> What is instead required is evidence more specific to the particular
> defendant, showing that his or her possession actually furthered the
> drug trafficking offense.

(continued...)

-14-

"during," and "in relation to" inform our decision that the facts here do not meet

the "in furtherance" requirement. In *United States v. Matthews*, 942 F.2d 779

(10th Cir. 1991), for example, police executing a search warrant for the apartment

of a suspected drug dealer discovered Mr. Matthews, a guest who had arrived in

town the night before, attempting to flush drugs down the toilet. Two guns were

found in the living room beside a TV stand. A coconspirator testified at trial that

the guns were routinely used for protection during "drug-selling excursions." *Id.*

at 782. Mr. Matthews was charged with "use" under section 924(c) and argued

that the evidence was insufficient. We agreed. Although we concluded that the

guns were readily accessible, nothing presented at trial showed that Mr. Matthews

intended to use the guns, that he ever handled the guns or saw another

coconspirator do so in connection with drug activities, that the firearms formed an

---

[3](...continued)

*Id.* at 414. The court ultimately concluded the proximity of the loaded weapon to substantial quantities of drugs and cash supported a finding that the gun was kept to guard against robbery and thus furthered the drug trafficking enterprise. *Id.* at 415.

In *Speight*, guns and drugs were found in an apartment, and one defendant testified at trial that the guns were "obtained and kept . . . for the purpose of protecting their drugs and money." 95 F. Supp.2d at 597. The district court dismissed the section 924(c) possession charge because the indictment had erroneously stated the "during and in relation to" standard rather than the stricter "in furtherance" standard applicable to possession. *Id.* at 599.

integral part of the criminal conspiracy, or that Mr. Matthews intended or approved their use. *Id.* at 783-84.

In *United States v. Nicholson*, 983 F.2d 983 (10th Cir. 1993), we distinguished between the requirement that the firearm be used or carried and the requirement that "the use or carriage of the weapon was 'during and in relation to' the drug trafficking crime." *Id.* at 990. Quoting *Matthews*, we stated that to satisfy the relational requirement, the government must offer evidence that the defendant intended the weapon to be available during the drug transaction. *Id.* We held that the government had "met its burden of proving that the presence of the gun played an integral role in the drug trafficking conspiracy by helping to ensure its success." *Id.* Although the defendant argued he always carried a weapon for personal protection, even when engaged in lawful activities, we held the presence of the gun could specifically "ensure [the] success" of the drug distribution activities by protecting defendant's drugs and cash. *Id.* Thus, the gun was carried "in relation to" the drug trafficking offense.

In *United States v. Baker*, 30 F.3d 1278 (10th Cir. 1994), we did not clearly distinguish the "use" and "during and in relation to" elements, instead defining "use" to include relational and accessibility requirements. We held that a defendant "uses a firearm for purposes of § 924(c)(1) when: (1) the defendant has ready access to the firearm and (2) the firearm was an integral part of his criminal

undertaking and its availability increased the likelihood that the criminal undertaking would succeed." *Id.* at 1279 (citation and internal quotations omitted). The "integral part" element is presumed whenever there is ready access to the firearm during commission of the offense, but a defendant may overcome that presumption "by presenting evidence that the weapon was present for a reason other than facilitating the drug transaction." *Id.* at 1280 (citation omitted). Mr. Baker's gun was readily accessible during his drug transactions, and we upheld his conviction upon concluding that a reasonable jury could have found the gun was an integral part of his drug business and increased the likelihood of its success. *Id.*

In *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994), drugs were found on top of a refrigerator in the kitchen of a residence, while a firearm was located on the top shelf of a closet in an upstairs bedroom. We affirmed the district court's dismissal of a section 924(c) charge, holding that "[t]he record fails to establish any linkage between [the defendant] and the firearm or the firearm and the drugs. All the government has proven is that the firearm was present in [the defendant's] residence." *Id.* at 1089. Although the gun was at the scene where the drug crime was committed, "'[t]here [was] utterly no proof that [the] gun was used at any time, for any reason, in any way related to the traffic of narcotics' or that defendant intended for it to be available for use." *Id.* at 1090.

We also addressed the "during and in relation to" standard in *United States v. Richardson*, 86 F.3d 1537 (10th Cir. 1996). We stated there that under this standard the government was required to show that "the defendant *intended* the weapon to be available for use during the drug transaction," "that the defendant availed himself of the weapon and that the weapon 'played an integral role' in the drug offense." *Id.* at 1548. While Mr. Richardson possessed firearms on his person and in his truck, he did not at that time possess drugs, and no evidence showed a firearm was present or even mentioned during the drug transactions at issue. Consequently, we held the evidence was insufficient to support Mr. Richardson's conviction for carrying a firearm during and in relation to drug possession. *Id.*[4]

Finally, in *United States v. Shuler*, 181 F.3d 1188 (10th Cir. 1999), the defendant was charged with carrying firearms during and in relation to a crime of violence after he robbed a sporting goods store at gunpoint. The guns at issue were part of the loot and "were simply carried out of the store during the robbery and were not armed with ammunition, nor brandished or used to threaten the store owner or to otherwise effectuate the robbery." *Id.* at 1189. The defendant conceded he "carried" the stolen guns "during" the robbery. *Id.* at 1190. The

---

[4] We did, however, find the evidence supported a separate charge of carrying the gun "during and in relation to a drug conspiracy." *Id.* at 1549.

sole issue on appeal was whether the carrying of those firearms "was 'in relation to' the robbery within the meaning of § 924(c)(1)." *Id.* at 1190. We held the evidence insufficient, stating that "[a] firearm is carried 'during and in relation to' the underlying crime, when the 'defendant avail[s] himself of the weapon and . . . the weapon play[s] an integral role in the [underlying offense].'" *Id.* (citation omitted). We pointed out that merely carrying the gun during the crime is not enough to meet the "during and in relation to" element unless the government proves the defendant intended the weapon to be available for use during the crime. *Id.*

In sum, our cases make clear that the "during and in relation to" requirement of section 924(c) necessitates some direct connection between the firearm and the drug offense. The legislative history of the 1998 amendments directs that the "in furtherance" requirement for possession is an even higher standard. Here, trial testimony established that Mr. Iiland possessed the firearm found in his apartment. He kept a large quantity of drugs in a separate storage unit he had rented. In addition, he admitted he had sold cocaine and he had been surveilled doing so. However, the legislative history of the 1998 amendment and our prior cases require that specific evidence establish the guns were possessed "in furtherance of" the drug crime, and here there is no evidence in the record connecting the gun to the drug transactions.

The facts here show only that a drug dealer possessed a gun. No evidence demonstrates that his possession furthered, promoted or advanced his illegal drug activity. There was no evidence that the gun and drugs were ever kept in the same place or that Mr. Iiland ever kept the gun accessible when conducting drug transactions. The fact that drug dealers in general often carry guns for protection is insufficient to show possession in furtherance of drug activity in Mr. Iiland's particular case. Because Mr. Iiland's possession of the gun was not shown to be "in furtherance of" any criminal activity, his conviction under section 924(c) cannot be sustained.

Accordingly, we **AFFIRM** Mr. Iiland's convictions for possessing a firearm after a former felony conviction, possessing cocaine with intent to distribute, and maintaining a location for the purpose of distributing cocaine. We **REVERSE** his conviction for possessing a firearm in furtherance of a drug trafficking crime, and we **REMAND** for further proceedings in light of this opinion.

No. 00-5012, United States v. Iiland

Judge McWilliams concurring in part and dissenting in part.

I concur in parts I, II, and III of the majority opinion.  I respectfully dissent from part IV of the majority opinion.

We are here concerned with that part of 18 U.S.C.§924(c) which makes it unlawful for a person to "possess" a firearm "in furtherance of a drug trafficking crime."  The jury convicted Iiland of that particular crime and in my view the evidence is sufficient to support such conviction.

Firearms were found in a search of Iiland's residence. Iiland stored drugs in a storage unit several miles from his residence.  Iiland, using his own name, rented the storage unit.  The search of Iiland's residence revealed on Iiland's person the key to the storage unit.  Evidence clearly indicated that Iiland was a central figure in a drug operation  in the Tulsa area which continued for several years.  Also found in Iiland's residence were portable scales, which, according to testimony of an FBI agent, were of a type suitable for weighing drugs, strongly suggesting, to me, that drugs were weighed in Iiland's residence.  All things considered, the evidence, in my view, was such that the jury could reasonably infer, as it did, that the firearm in question was possessed in furtherance of a drug trafficking crime.  Evidence of the "in furtherance of" issue, when the charge is "possession" of a firearm,  will, of course, almost always be circumstantial.  By denouncing the "possession" of a firearm "in furtherance of a drug trafficking

crime," Congress intended to add to the other provisions in 18 U.S.C. § 924(c) which make it unlawful to "use" or "carry" a firearm "during and in relation to a drug trafficking crime." The majority opinion, in my view, virtually negates the "possession" prong of 924(c).