NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0525n.06
Filed: July 25, 2007

No. 05-6765

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PHILLIP STAFFORD, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant - Appellant. | ) | |

Before: CLAY and SUTTON, Circuit Judges; and GREER, District Judge.[*]

SUTTON, Circuit Judge. Phillip Stafford challenges several convictions related to methamphetamine production and distribution as well as weapons possession. We affirm.

I.

In November 2004, the Memphis Police Department learned that Phillip Stafford might be selling methamphetamine from a warehouse he leased. Based on this tip, the police asked an informant to make a controlled purchase of methamphetamine from Stafford. After the informant purchased methamphetamine from Stafford, the police obtained a search warrant to search his warehouse.

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Four officers executed the search warrant. When no one answered their knock on the door, they entered the warehouse and noticed an "extremely strong chemical smell," the "most prominent" of which was ammonia, a chemical used in the production of methamphetamine. JA 130–31. Once inside the 5500-square-foot warehouse, the officers discovered a large methamphetamine production operation. The facility housed "two different types of clandestine manufacturing methods." JA 65. The first one produced anhydrous ammonia; the second combined the ammonia with other precursor chemicals (lithium and pseudoephedrine) to produce methamphetamine. Garbage bags located outside the warehouse contained "waste from a methamphetamine lab" along with "a bail bond letter addressed to Phillip Stafford." JA 131–32.

The officers also found a Winnebago camper parked inside the warehouse. It contained a loaded .357 pistol, a digital scale and a smoking pipe sitting atop a table behind the front passenger seat. A bench seat "[w]ithin two feet" of the table held a "large quantity of methamphetamine," and a shelf directly above the table contained $12,000 in cash. JA 188–89. Two additional guns rested on the bench seat. One of them, a loaded .38 revolver, sat on top of a black notebook. Inside the black notebook police found "[a] large baggy of methamphetamine," Stafford's tax returns and a plastic container storing small plastic baggies of the type used to separate methamphetamine into "grams, ounces, half ounces, and so forth." JA 190–92. The police found another weapon—a Remington 870 shotgun—in a storage compartment and $4,000 in cash stuffed underneath a mattress. A small shelf outside the camper held rounds of ammunition, a bail bond letter addressed

to Stafford, two digital scales, a methamphetamine smoking pipe, packs of pseudoephedrine and lithium batteries.

Four days after the search, an officer pulled over a pickup truck driven by Stafford. The officer noticed a bag of ammonium nitrate and a can of paint thinner (products also used in manufacturing methamphetamine) in the back of the truck. After arresting Stafford, the officer searched the truck and found a pill bottle containing methamphetamine, a glass smoking pipe, receipts listing the purchase of items used in manufacturing methamphetamine, empty pseudoephedrine boxes and blister packs, a butane torch, methamphetamine packaging materials and the search warrant that the officers had left at the warehouse.

A federal grand jury returned a nine-count indictment against Stafford. The indictment included three counts related to evidence discovered during the arrest—possession with attempt to distribute methamphetamine, 21 U.S.C. § 841(a)(1), possession of items used to manufacture methamphetamine, *id*. § 843(a)(6), and possession of pseudoephedrine with intent to manufacture methamphetamine, *id*. § 841(c)—and six counts related to evidence discovered during the search of the warehouse. A jury found Stafford guilty of the first three counts, and the district court declared a mistrial as to the remaining counts.

The grand jury handed down a superseding indictment. It recharged Stafford with crimes based on evidence discovered during the warehouse search, including possession with intent to distribute methamphetamine, possession of items used to manufacture methamphetamine, possession

of pseudoephedrine with intent to manufacture methamphetamine, attempting to manufacture methamphetamine, 21 U.S.C. § 846, possession of a firearm in furtherance of distributing methamphetamine, 18 U.S.C. § 924(c), and possession of a firearm as a convicted felon, *id*. § 922(g). A jury convicted Stafford on all of the charges, and the district court sentenced him to a 150-month prison term—based on both sets of convictions.

II.

Stafford first challenges the sufficiency of the evidence to convict him of possessing a firearm in furtherance of a drug-trafficking crime. Federal law prohibits the possession of a firearm "in furtherance" of a "drug trafficking crime." 18 U.S.C. § 924(c). To sustain a conviction, the weapon must "promote or facilitate" the underlying crime, requiring "a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 461–62 (6th Cir. 2001). Several factors bear on the inquiry: Was the gun strategically located to allow quick and easy use? Was it loaded? What type of gun was it? Did the defendant possess the gun legally? What type of drug activity did it allegedly further? And what were the circumstances surrounding the discovery of the gun? *Id*.

The answers to these questions all support the jury verdict and all show "a specific nexus between the gun and the crime charged." The three guns—an 870 Remington pump shotgun, a .357 Smith and Wesson magnum pistol and a .38 caliber Smith and Wesson revolver—do not suggest an innocent purpose, such as hunting or antique collecting. Neither does the fact that Stafford possessed

the three guns illegally, as the jury found and as he does not contest. And neither does the fact that two of the guns—the revolver and the pistol—were loaded. Uncontradicted expert testimony showed that methamphetamine manufacturers often protect their "stash" with guns. JA 75–76. Perhaps most importantly, the police found the loaded pistol and revolver where Stafford could readily use them to protect the drugs—the pistol was within two feet of a "large quantity of methamphetamine" and within easy reach of $12,000, JA 188–89, and the revolver sat atop a notebook that contained a "large baggy" full of the drug, JA 191. *See United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004) ("[A] jury can reasonably infer that firearms which are strategically located so as to provide defense or deterrence in furtherance of the drug trafficking are used in furtherance of a drug trafficking crime.") (internal quotation marks omitted). The shotgun, while located a bit farther away in a storage compartment, was nevertheless "easily accessible." *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (affirming conviction when the police found the defendant with a gun in a bedroom located ten to fifteen feet from the garage where he stored drugs).

*United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001), does not alter this conclusion. That "drug dealers in general often carry guns for protection," the court held, "is insufficient to show possession in furtherance of drug activity in [a] particular case," *id*. at 1274. No doubt, such evidence by itself may not suffice to satisfy the "in furtherance" requirement, but that does not mean this type of evidence has no bearing—along with other factors—on the inquiry. *See Swafford*, 385 F.3d at 1029; *Couch*, 367 F.3d at 561. Unlike *Iiland*, this is not a case in which the government's

theory of conviction turned solely on the general observation that drug dealers generally carry guns for protection—or in which, in the words of *Iiland*, the facts show "only that a drug dealer possessed a gun." 254 F.3d at 1274 (noting, for example, that "[t]here was no evidence that the gun and drugs were ever kept in the same place").

At oral argument, Stafford's counsel also noted that the defendant was not at the scene when the weapons and drug paraphernalia were found by the police. The case law, however, draws no such distinction, and indeed the concept of *constructive* possession precludes drawing any such distinction.

Stafford also raises two evidentiary challenges, both of them arising from evidence admitted during the second trial. The first relates to the admission of "other acts" evidence under Evidence Rules 404(b) and 403—that during an arrest seven months before the warehouse search a police officer found Stafford with "eight Lithium batteries, four cans of Coleman fuel, some tubing, aquarium tubing, and two bags of dry ice." JA 212. The district court did not abuse its discretion in admitting this evidence. *See United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003) (applying abuse-of-discretion standard to Rule 404(b) decision).

Evidence Rule 404(b) says that evidence of a defendant's "other crimes, wrongs, or acts" may not be admitted for one purpose ("to prove the character of a person in order to show action in conformity therewith") but may be admitted for "other purposes" ("proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). *See United States*

*v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) (Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified. The list of permissible uses is not exclusive.").

In assessing the admission of other-acts evidence under Rules 404(b) and 403, we ask three questions: (1) is there sufficient evidence that the other act occurred? (2) is the evidence probative of a material issue other than character? and (3) is the probative value of the evidence outweighed by the unfair prejudice it may cause? *Copeland*, 321 F.3d at 596. First, no one questions whether Stafford possessed methamphetamine precursors when he was arrested, so the issue turns on the other two steps.

Second, the district court admitted the evidence for an appropriate purpose—to "prove intent or knowledge on the part of the defendant." JA 197; *see* Fed. R. Evid. 404(b) (listing proof of "intent" and "knowledge" as legitimate uses of other-acts evidence). That purpose also was material to the trial. One of the counts—possession of methamphetamine-manufacturing materials— required the government to show Stafford's state of mind with respect to his possession of otherwise-lawful items, namely that he possessed them "knowing, intending, or having reasonable cause to believe that [they would] be used to manufacture" methamphetamine. 21 U.S.C. § 843(a)(6); *see Johnson*, 27 F.3d at 1192. Stafford never admitted knowing that the items found in his warehouse would be used to manufacture methamphetamine, and his witnesses sought to cast doubt upon his responsibility for the warehouse's use as a methamphetamine production facility. *See* JA 230–31 (Stafford's stepson testifying that he had never seen drugs at the warehouse, that the warehouse did

not emit a chemical odor and that Stafford had stayed with him in the days leading up to the search); JA 238–39 (Stafford's friend testifying that others, including the informant, had regular access to the warehouse).

That Stafford possessed methamphetamine precursors seven months before the search tends to show that he knew that the same types of items found in his warehouse—many of them purchasable at a run-of-the-mill, all-purpose grocery store—would be used to manufacture methamphetamine. The prior event was sufficiently contemporaneous to be relevant, *see United States v. Jones*, 403 F.3d 817, 820–21 (6th Cir. 2005) (affirming the district court's admission of testimony in a § 843(a)(6) methamphetamine case that the defendant three years before the alleged crime had instructed an acquaintance how to manufacture methamphetamine), and Stafford's prior possession of methamphetamine precursors bears on his intent regarding the similar items found in his warehouse, *see United States v. Miller*, No. 05-5187, 2007 WL 930425, at *11 (6th Cir. March 28, 2007) (affirming district court's ruling "that the Government could use Miller's guilty plea in [a prior] methamphetamine-possession case to demonstrate his intent to produce methamphetamine in his backyard"); *United States v. Argo*, 23 F. App'x 302, 307–08 (6th Cir. Oct. 4, 2001) (affirming the "district court['s] conclu[sion] that . . . testimony concerning Argo's prior manufacture of methamphetamine was admissible for the purpose of showing Argo's intent to manufacture methamphetamine"); *United States v. Benbrook*, 40 F.3d 88, 92 (5th Cir. 1994) ("Past drug activities involving methamphetamine logically are relevant to what Benbrook intended to do with the methamphetamine precursor chemicals found in his home.").

Third, consistent with Evidence Rule 403, the district court permissibly determined that the "probative value" of the evidence was not "substantially outweighed by the danger of unfair prejudice" arising from it. Within "a few minutes" of admitting the evidence, the judge told the jury that it should be considered "only as it relates to the government's claim on the defendant's intent or knowledge, and [the jury] must not consider it for any other purpose." JA 225. The government also declined to offer other evidence related to Stafford's arrest that posed a greater risk of unfair prejudice—that items in Stafford's possession during the arrest contained methamphetamine residue and that the arrest led to a state-court conviction for possessing materials with intent to manufacture methamphetamine. On this record, the district court did not abuse its discretion in admitting the evidence.

C.

Stafford also challenges under Rule 404(b) the admission of evidence about the circumstances of his arrest, including his possession of methamphetamine precursors. Reasoning that the evidence "would complete . . . th[e] story, th[e] series of events that occurred," the court concluded that it did not violate Rule 404(b). JA 42.

The district court did not abuse its discretion in admitting the evidence. While, as shown, the rule prohibits the use of "[e]vidence of other . . . acts . . . to prove the character of a person in order to show action in conformity therewith," Fed. R. Evid. 404(b), it does not bar "background" or "*res gestae*" evidence. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (explaining

that such evidence "does not implicate Rule 404(b)"). "Proper background" information "has a . . . temporal . . . connection with the charged offense" and often "is directly probative of the charged offense, arises from the same events as the charged offense, . . . or completes the story of the charged offense." *Id*.; *see also United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003) ("Rule 404(b), however, does not apply to evidence that itself is probative of the crime charged, without regard to whether any 'other act' occurred.").

In this case, Stafford remained at large after the search of the warehouse. Informing the jury about the circumstances surrounding Stafford's arrest four days later tied up this loose end and provided a natural conclusion to the story. The evidence also was "directly probative of the charged offense," as Stafford's possession of the same type of items as those items found in the warehouse had a bearing on the charges against him. At trial, Stafford presented testimony from his stepson, David Sprague, and his friend William Miller, both of whom challenged the connection between Stafford and the warehouse's illicit contents. They testified that they had not seen drugs or guns at the warehouse; that Stafford allowed others (including the informant in this case) regular access to the warehouse; that no odors emanated from the warehouse; and that Stafford had stayed with Sprague for several days prior to and including the day of the search. In the face of this testimony from defendant's witnesses, the evidence discovered during Stafford's arrest strengthened the connection between Stafford and the items found at the warehouse. Stafford's possession of the warrant left behind by the police suggested that he had been to the warehouse since the search and that he knew that the search had taken place. Several of the receipts for purchases of

methamphetamine precursor chemicals found in his truck predated the search, suggesting he possessed precursors during the time specified by the indictment and supplying additional proof that the methamphetamine production facility was his. The jury also reasonably could infer that Stafford was traveling with methamphetamine precursors because he knew his production facility had been compromised.

Stafford briefly argues that the district court's jury instruction regarding this evidence—which concluded that "the defendant is here on trial only for those charges in the indictment and not for any other acts," JA 120—was confusing and that the district court should have used the Sixth Circuit's pattern instruction for "other acts" evidence. *See* Br. at 41. Stafford, however, did not object to this instruction at trial. *See* JA 119–20; *see also* JA 92 (Stafford responding to the district court's proposed outline for the jury instruction and suggestion that he could "write something else out" by saying "[n]o[,] I think that's fine"). And he has not shown that plain error (or anything approaching it) arose from this instruction. *See* Fed R. Crim. P. 52(b).

III.

For these reasons, we affirm.