RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0133P (6th Cir.)
File Name: 04a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 03-5109

RONALD COUCH,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 02-00006—Karen K. Caldwell, District Judge.

Submitted: March 11, 2004

Decided and Filed: May 10, 2004

Before: MARTIN, CLAY, and CUDAHY, Circuit Judges.[*]

_____

## COUNSEL

**ON BRIEF:** Elizabeth Ann Cure, COLMAN & CURE, Bloomington, Indiana, for Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington,

---

[*] The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

Kentucky, Roger West, ASSISTANT UNITED STATES ATTORNEY, London, Kentucky, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Ronald Couch appeals his jury conviction and sentence for distribution of Oxycontin in violation of 21 U.S.C. § 846 and possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). For the reasons that follow, we AFFIRM.

### I.

During 2001, the Kentucky State Police began investigating the activities of Roy Couch (Ronald Couch's nephew) after learning that he was involved in the distribution of Oxycontin. The police made controlled buys of Oxycontin from Jamie Fields and Randall Napier. During these transactions, the police learned that Roy Couch supplied Oxycontin to Fields and Napier for sale. Additionally, the police made controlled buys directly from Roy Couch as well as Vernon Todd Jelly. The police investigation revealed that Roy Couch obtained Oxycontin from an individual in Saul, Kentucky. Upon Roy Couch's arrest, Jelly began buying Oxycontin directly from Ronald Couch ("Couch"). With Jelly's consent, the police searched his home and found Oxycontin. An interview with Jelly revealed that Couch had supplied Jelly with the Oxycontin from his home in Saul, Kentucky.

Following this interview, the police sought, received and executed a warrant to search Couch's home. When the police entered the home, they found Couch in his living room carrying six Oxycontin pills wrapped in aluminum foil and 2.295 grams of methamphetamine on his person and immediately arrested him. Nearby, the police discovered a

loaded assault rifle in plain view on top of a cabinet. In a corner of Couch's garage, the police discovered over $10,000 in cash and a loaded Smith & Wesson .357 caliber handgun–a weapon that the police knew to be commonly associated with drug trafficking crimes. Elsewhere in Couch's garage, the police discovered over 200 pills wrapped in aluminum foil–including Zantac, Lorcet and other Schedule III pain killers–as well as nine shotguns and rifles. A search of Couch's vehicle revealed another loaded shotgun.

On September 25, 2001, a multi-count indictment was issued against Couch, along with Roy Couch, Jelly, Greg Hamblin, Napier and Fields. The grand jury specifically charged Ronald Couch with conspiring to possess with the intent to distribute, and distributing, Oxycontin in violation of 21 U.S.C. §846, possession with the intent to distribute Oxycontin, methamphetamine, and hydrocodone in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Additionally, pursuant to 21 U.S.C. § 853, a forfeiture charge was issued against Couch for the $10,466 in currency and twelve firearms found in his home.

On November 21, 2001, Couch filed a motion to suppress the evidence seized at his home, arguing that the search warrant was unsupported by probable cause. The district court denied the motion on April 25, 2002, after hearing arguments on the issue and requesting additional memoranda regarding the sufficiency of the affidavit supporting the search warrant. On May 13, Couch made an additional motion to suppress the evidence found at his home, which the district court denied on May 15. On May 20, a jury found Couch guilty on all counts contained in the indictment. Couch was sentenced to six years imprisonment on each of his drug convictions, to be served concurrently, as well as five years imprisonment on his firearms conviction, to be served consecutively–for a total of eleven years imprisonment. This timely appeal followed.

## II.

On appeal, Couch argues that the district court erred in denying his motion to suppress the evidence found in his home. Specifically, he contends that the police lacked probable cause to obtain a search warrant because the affidavit filed by the police failed to show that Jelly was a reliable informant and the police failed to adequately and independently corroborate the information that Jelly had provided. Additionally, Couch argues that there was insufficient evidence supporting his firearms conviction for violating 18 U.S.C. § 924(c). We find these arguments unpersuasive.

### A.

First, we address Couch's argument that the district court erred in denying his motion to suppress evidence. In reviewing a district court's denial of a motion to suppress evidence, we employ a two-fold standard of review. That is, we uphold the district court's factual determinations unless clearly erroneous, but we review the district court's legal conclusions, such as the existence or absence of probable cause, *de novo*. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "'When reviewing the denial of a motion to suppress, we must consider the evidence in the light most favorable to the government.'" *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *Carpenter*, 360 F.3d at 594 (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Consistent with the preference that searches are conducted pursuant to a search warrant, however, this Court affords "great deference" to the magistrate's probable cause determination. *Rodriguez-Suazo*,

346 F.3d at 643. The relevant inquiry becomes whether "'the magistrate had a substantial basis for finding that the [supporting] affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Probable cause, while "incapable of precise definition or quantification into percentages," *Maryland v. Pringle*, 124 S.Ct. 795, 800 (2003), exists when from the "totality of the circumstances" there exists a "fair probability" that fruits of a criminal activity will be located within the premises to be searched, *Rodriguez-Suazo*, 346 F.3d at 644.

In this case, the information contained in the affidavit supporting the search warrant was not that of an "uncorroborated tip of an unknown informant." *United States v. Perkins*, 994 F.2d 1184, 1188 (6th Cir. 1993). The informant's identity, Jelly, was known to the officers and because Jelly was named in the affidavit, he could potentially be held accountable for providing false information.[1] Jelly provided an account of Couch's criminal activities based upon his relationship and personal experience with Couch. Jelly's veracity was immediately evident in that the information he provided coincided with what the police had already learned from its investigation of Roy Couch. Thus, we conclude that the magistrate had a "substantial basis for concluding that a search of [Couch's] home would uncover evidence of wrongdoing," *United States v. Miller*, 314 F.3d 265, 271 (6th Cir. 2002), and accordingly find Couch's first argument unpersuasive. *Cf. Carpenter*, 360 F.3d at 594-97 (finding that the affidavit supporting the search warrant did not contain sufficient facts to support the probable cause determination, but applying the "good faith exception" to the exclusionary rule).

---

[1] Kentucky Revised Statutes § 519.040(1)(d) makes it a Class A misdemeanor to "knowingly give[] false information to any law enforcement officer with intent to implicate another."

### B.

Second, we review Couch's argument that insufficient evidence supported his firearms conviction for violating 18 U.S.C. § 924(c). This Court, in reviewing a claim of insufficient evidence, must examine the evidence most favorable to the United States and determine whether "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Davis*, 306 F.3d 398, 408 (6th Cir. 2002) (internal quotation marks omitted).

Section 924(c) provides:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, *in furtherance of any such crime, possesses a firearm*, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime - -

(i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added). In order to prove that a defendant has violated section 924(c), the United States must prove that the "'firearm was possessed to advance or promote the commission of the underlying crime.'" *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001) (quoting H.R. REP. NO. 105-344 (1997), 1997 WL 668339, at *11-12). That is, the United States must prove a "nexus between the gun and the crime charged." *Id.* at 462. Although possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as "to provide defense or deterrence in furtherance of the drug trafficking" are used in furtherance of a drug trafficking crime. *See id.* at 462-63.

In this case, as discussed, a loaded assault riffle was in plain view at the location where the officers arrested Couch. Moreover, the police located an additional eleven guns in Couch's garage–the area where Couch's drug transactions were known to occur and where the officers located over 200 additional pills.  Furthermore, the officers testified that at least one of the particular firearms discovered–the Smith & Wesson handgun–is commonly associated with drug trafficking crimes.  Considering the foregoing, we conclude that any rational trier of fact could have concluded that the United States proved the elements of the crime beyond a reasonable doubt.

Accordingly, we AFFIRM the judgment of the district court.