NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0972n.06
Filed: December 14, 2005

Nos. 04-1697/04-1754

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

and

HORACIO RODRIGUEZ-RUIZ, and
HUBERT ALLEN TIMMER,

      Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

**Before: SILER and CLAY, Circuit Judges; and CARR, District Judge.**[*]

      **JAMES G. CARR, DISTRICT JUDGE**. These are appeals from the Defendants' convictions and sentences for conspiracy to distribute marijuana.

      The Defendants were two of six persons charged with conspiracy under 21 U.S.C. §§ 841(a)(1), 846, to distribute more than 100 pounds of marijuana. Timmer stood trial and was found guilty. Rodriguez-Ruiz pled guilty.

      Prior to trial Timmer moved to suppress evidence found at the home he shared with a girlfriend, Angela Betcher. The district court overruled his motion.

      At Timmer's sentencing, the court imposed a two-level enhancement for possession of a

---

[*] The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by designation.

dangerous weapon under § 2D1.1(b)(1) of the Sentencing Guidelines.

At his sentencing, Rodriguez-Ruiz sought, but did not receive, a two-level "safety valve" downward adjustment pursuant to Guidelines § 2D1.1(b)(6).

Defendant Timmer appeals the denial of a motion to dismiss and his sentence. Defendant Rodriguez-Ruiz appeals his sentence.

For the reasons that follow, we **AFFIRM** Timmer's conviction and **REVERSE AND REMAND** as to his sentence. We **AFFIRM** the sentence imposed on Rodriguez-Ruiz.

## Background

### I. Timmer

On May 13, 2003, at about 8:45 p.m., three police officers, acting on a tip that the Defendant had received a fifty-pound shipment of marijuana earlier that day, went to the trailer home in Lansing, Michigan, shared by Timmer and Ms. Betcher. Though the facts of the encounter between the officers and Ms. Betcher were disputed, the district court found the officers' testimony more credible than that of Ms. Betcher.

When the officers arrived, Ms. Betcher was home alone and on the telephone. Ms. Betcher came to the front door, which was open. An Officer Lynde identified herself as a police officer, told Ms. Betcher that she needed to talk with her, and asked to talk inside so the neighbors would not be involved.

Ms. Betcher ended the phone conversation, put the phone down, and opened the screen door, admitting the officers.

While standing in the doorway, Officer Lynde asked Ms. Betcher if the Defendant lived there. Advised that he did, Officer Lynde told Ms. Betcher of the tip about his receiving fifty pounds of marijuana earlier in the day. Officer Lynde asked if there was any marijuana in the trailer; Ms. Betcher said there was not a large quantity in the residence.

Officer Lynde interpreted this response to mean that there was some marijuana on the premises. She asked Ms. Betcher several times for permission to search, telling Ms. Betcher they could do this the easy way [by getting consent] or the hard way [by getting a search warrant].

Ms. Betcher repeatedly told the officers she could not consent to a search; she mentioned that the trailer belonged to Timmer.

After this colloquy had lasted about five minutes, Officer Lynde and another officer left to obtain a search warrant. Because the officers believed that there may have been some marijuana in the trailer, the third officer remained behind and sat on a couch in the trailer.

Within thirty seconds after Officer Lynde and the other officer had left the trailer, Ms. Betcher called to them. The officers returned, and, as they re-entered the trailer, Ms. Betcher told them they could search it. She also stated that she wanted the officers gone by the time her daughter arrived home.

Ms. Betcher then led the officers to the bedroom. She showed them a small quantity of marijuana in a dresser drawer. She told the officers that the marijuana in the dresser was the only marijuana on the premises of which she was aware. She also allowed the officers to continue searching.

While the two other officers were continuing the search of the trailer, Officer Lynde gave

3

a consent form to Ms. Betcher and told her to read it. Ms. Betcher took a few seconds to look at the form and signed it.

The officers did not threaten Ms. Betcher: they did not display their handcuffs, and they did not tell Ms. Betcher that she would be arrested or that her five-year old daughter would be taken if she did not consent to a search.

The Defendant arrived home while the officers were still there. He was arrested. At some point, Ms. Betcher's mother had also arrived. She yelled at her daughter, who became emotional and upset and cried. Ms. Betcher quickly calmed down.

During the search, the officers found and seized $13,000 (discovered in a shoebox), some marijuana (though substantially less than the fifty pounds mentioned in the tip that brought the officer's to the Defendant's residence), and a scale. In addition, officers found an unloaded handgun between the mattress and box spring of the bed. They did not find any ammunition for the firearm.

At sentencing, the Defendant's sister testified that the Defendant, intending to engage in target practice, had bought the firearm long before his involvement in the conspiracy. Ms. Betcher concurred in that testimony, and testified that she had placed the weapon between the mattress and box spring.

There was no evidence that the Defendant had ever carried or displayed the gun while getting, keeping, or distributing illegal drugs. Nonetheless, the district court found that the Defendant had possessed the weapon in conjunction with his drug trafficking. On that basis, the judge enhanced the Defendant's base offense level for purposes of computing his Guideline range.

**2. Rodriguez-Ruiz**

4

At his sentencing, Defendant Rodriguez-Ruiz asked for a two level downward adjustment for "safety valve" compliance under Guideline § 2D1.1(b)(6) and release from the minimum mandatory sentence under § 5C1.2(a)(1)-(5).

The judge denied the request on the basis, as reported in the presentence report, that the Defendant had not truthfully provided all information and evidence concerning the offense or offenses that were part of his criminal conduct. Absent satisfaction of this precondition, the Defendant was not entitled to safety valve treatment and relief.

In response to the statement in the presentence report, the Defendant's attorney argued that a meeting during the trial between him, the Defendant, and the prosecutor had satisfied the Defendant's obligation to provide information to the government, so that he qualified for safety valve treatment. The meeting, according to the Defendant's attorney, was to "discuss what [the Defendant's] testimony would be in an attempt to decide whether or not he would be called by the government or whether he would qualify for safety valve." (J.A. at 33).

The government was interested in the Defendant's possible testimony against a co-Defendant, Sifuentes. At the meeting, Rodriguez-Ruiz, however, had "indicated that Mr. Sifuentes was not involved in any way and that he merely accompanied him to the restaurant as a companion, but was not involved in the conspiracy." (*Id*. at 34).

According to the prosecutor, the meeting lasted about fifteen to twenty minutes. (*Id*. at 35). He was emphatic that the purpose of the meeting had only been to determine whether the Defendant would testify against Sifuentes. Elaborating, the prosecutor stated:

It was not a safety valve meeting. We did not do a full debriefing. In fact, we didn't

take notes, and we didn't have any reports made.  We didn't go over the conspiracy from beginning to end, what Mr. Ruiz' involvement was, who else he was dealing with, how he was dealing with Krueger, or anything else.  We were there focused in the middle of a trial, during a break, solely on the issue of what was Mr. Sifuentes' involvement, and would the defendant be willing to testify against him.

I believe either later that day or maybe the next morning – I'm not exactly sure, but very shortly within 24 hours, we were back in chambers.  And you asked me  point blank what was the situation with Mr. Ruiz.  And I told you then that he was not being truthful.  He was not cooperating.  And that was the end of it.  I was not going to call him as a witness.

## Discussion

### 1. Timmer

### A. Motion to Suppress

Timmer challenges the admission of evidence seized from the residence he shared with Ms. Betcher.  We review the district court's factual determinations on a clearly erroneous standard, and its legal conclusions *de novo*.  *United States v. Couch*  367 F.3d 557, 560 (6th Cir. ,2004).

The government argues, and its argument is well-taken, that the approach taken by the officers, colloquially known as "knock and talk," is not constitutionally infirm. This Court has held that a "knock and talk," where officers arrive unannounced at a residence, knock on the door, and ask to speak with someone, does not violate the Fourth Amendment. *Ewolski v. City of Brusnwick*, 287 F.3d 492, 504-05 (6th Cir. 2002).

The district judge found that Ms. Betcher had authority to consent to a search by the officers, had consented to the search, and her consent was uncoerced.  We find no error in these findings.

Ms. Betcher and the Defendant shared the trailer as their common home.  She thus had "mutual use of the property" and "joint access or control for most purposes." *United States v.*

*Matlock*, 415 U.S. 164, 171 n.7 (1974). Under such circumstances, the Supreme Court stated in

*Matlock*, "it is reasonable to recognize that any of the co-inhabitants has the right to permit the

inspection in his own right and that the others have assumed the risk that one of their number might

permit the common area to be searched." *Id*. Thus, Ms. Betcher had the authority to consent to the

search.

Her consent was voluntary. Ms. Betcher knew that she had the right to demand a warrant;

she referred to that right and refused to accede to the officers' initial requests for permission to

search the trailer.

There were considerable differences in the testimony, but the District Court resolved those

differences by finding the government's witnesses to be more credible than Ms. Betcher. The record

suggests that the district judge's determination was well-founded.

The only question is whether Ms. Betcher's consent was freely given or was coerced or

resulted from mere submission to authority. *See generally United States v. Carter*, 378 F.3d 584, 588

(6th Cir. 2004) (en banc). The fact that the officers indicated that they would go for a warrant if

consent was not forthcoming does not necessarily imply that Ms. Betcher simply acquiesced to the

officers' authority. *See, e.g., United States v. Salvo,* 133 F.3d 943, 954 (6th Cir. 1998) ("It is

well-settled that the agent's statements to the effect that he would obtain a warrant if Salvo did not

consent to the search does not taint Salvo's consent to a search.").

The District Judge found that Ms. Betcher's consent was voluntary. The record supports that

finding. Two officers left after Ms. Betcher refused to allow a search without a warrant. They did

nothing to prompt her to recall them and allow them to search the trailer. Her only condition was

that the officers finish before her young daughter came home.

Concern for her daughter, rather than coercion or submission, led to the consent to search. The fact that consent results from such concern does not make it invalid, especially where, as here, the officers did nothing to provoke or enhance such concern.

Accordingly, we affirm the district court's decision to deny the Defendant's motion to suppress.

## B. Sentence

Timmer's sentence was imposed prior to *United States v. Booker*, 543 U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in which the Supreme Court held that, to avoid the unconstitutional consequences of fact-finding by a judge, rather than a jury, with regard to facts that could enhance a sentence under the Sentencing Guidelines, the Guidelines had to be deemed advisory.

In light of *Booker*, we vacate Defendant's sentence and remand his case for resentencing.

We review factual findings impacting the Guidelines advisory sentence range on the conventional clearly erroneous standard. *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005).

Here, police searched the Defendant's home and found, among other things, a large amount of marijuana, $13,000 in cash, and a pistol. The police found the firearm beneath a mattress in the same room as the marijuana, cash, scales and other items.

Because the police had found a gun on the premises, the government asked the District Judge to impose a two-level sentence enhancement under Guideline § 2D1.1(b)(1), which applies to drug offenses where the Defendant possessed a dangerous weapon. The judge heard testimony on the issue, but did not submit it to a jury. At the hearing, the Defendant admitted that the gun was

8

in his constructive possession, but argued that the enhancement should not apply because he had bought the firearm for target practice and, in any event, it was clearly improbable that the gun was connected to the offense. He did not raise an *Apprendi*, *Blakely*, or *Booker* argument at his sentencing.

The District Judge made a factual finding that the firearm was connected to the drug charge. The judge imposed the two-level enhancement but sentenced the Defendant to 78 months, at the low end of the applicable range. That sentence overlaps with the high end of the range applicable had the judge not imposed the enhancement.

It is immaterial that the Defendant may not have preserved his *Booker* challenge. We have held, in light of *Booker*, that we will remand cases on direct appeal for resentencing where a *Booker* error occurred at the sentencing, even if the error was not preserved. *United States v. Davis*, 397 F.3d 340 (6th Cir. 2005); *see, e.g., United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005).

The "remedy" majority opinion in *Booker* (holding that the Guidelines were advisory) did not require that facts increasing the advisory guideline range be alleged in the indictment or proved to a jury beyond a reasonable doubt. Justice Breyer's opinion explicitly rejected the proposition that a jury had to find sentencing facts: in his view, such requirement "would destroy the system." 125 S.Ct. at 760.

Under *Booker*, therefore, judges still find the facts pertinent to determining the Guideline range. *United States v. Harris*, 397 F.3d 404, 416 (6th Cir. 2005). We have, moreover, continued to permit such factual findings to be based on the preponderance of the evidence. *See United States v. Warwick*, 2005 WL 2293478, *3 (6th Cir. Sep 20, 2005 (unpublished disposition) (holding that

9

"[t]he Government bears the burden of proving by a preponderance of the evidence the existence of a factor used to support a Guidelines-sentencing enhancement.").[1]

In *United States v. Oliver*, for example, we upheld the district court's finding that the Defendant's flight from a halfway house constituted obstruction of justice, thus exposing him to an enhanced sentence. 397 F.3d at 381-82. We remanded for "the district court to determine whether such a sentencing enhancement ought to be applied now that the federal sentencing guidelines are merely advisory." *Id.* at 382 n.5.[2]

We review factual findings impacting the Guidelines advisory sentence range on the conventional clearly erroneous standard. *United States v. Oliver*, 397 F.3d at 374.

Here, an ample factual basis supports the trial judge's finding that the firearm was used in connection with the Defendant's drug offense. The weapon was found in the same room as several items – drugs, a scale, and substantial cash – directly related to the drug offense. The proximity and accessibility of the gun to these other drug-trafficking related items made it more likely than not that the gun and drug trafficking were connected.

We therefore affirm the district judge's factual finding, but remand for the judge to

---

[1] The Fifth Circuit also has held that, because the Guidelines are now merely advisory, judicial fact-finding with proof by a preponderance of the evidence passes constitutional muster. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

[2] The Fourth Circuit has held that district courts must still make factual findings when determining the appropriate sentence. *United States v. Gray*, 405 F.3d 227, 244 n.10 (4th Cir. 2005). The court stated that, on remand, a district court imposing a sentence must first determine the appropriate sentence range according to the Guidelines by making factual findings appropriate for that determination and then consider that sentencing range along with other factors described in 18 U.S.C. § 3553(a). *Id.*

determine the appropriate sentence in light of the fact that the judge may – but need not – apply the sentence enhancement because *Booker* rendered the Guidelines advisory.

## 2. Rodriguez-Ruiz

The Defendant claims that the district court erred when it declined to adjust his sentence on the basis of the "safety valve" provision of Guidelines § 5C1.2. We review the factual basis for its refusal to apply the safety valve provision on the basis of clear error. *United States v. O'Dell*, 247 F.3d 655, 674 (6th Cir. 2001); *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996).

Defendants who meet all criteria for the safety valve adjustment can receive a sentence beneath the mandatory minimum otherwise prescribed. 18 U.S.C. § 3553(f); USSG § 5C1.2. The adjustment would be two levels downward. USSG § 2D1.1(b)(6).

The Defendant met four of the qualifying criteria for safety valve treatment: he had no more than one criminal history point, he did not use violence or threaten violence in committing his crime, no one suffered death or serious bodily injury, and the Defendant was not an organizer, leader, manager, or supervisor in the offense.

The fifth criterion is, however, in dispute. That criterion requires that not later than the time of the sentencing hearing, the Defendant truthfully provide to the Government all information and evidence the Defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. The fact that the Defendant has no relevant or useful information to provide or that the Government is already aware of the information does not preclude a determination by the court that the Defendant has complied with this requirement. USSG § 5C1.2(a).

11

The Defendant has the burden of proving that he qualifies for the safety valve adjustment. *Adu*, 82 F.3d at 123-24.

To qualify for safety valve treatment under § 5C1.2, the Defendant must engage in an "affirmative act" by "truthfully disclosing all the information" concerning the offenses. *Id.* at 124. We have held that "[t]he defendant is required to provide complete information regarding not only the offense of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense." *United States v. Salgado,* 250 F.3d 438, 459 (6th Cir. 2001); *United States v. Cortez-Lopez,* 59 Fed. Appx. 68, 69 (6th Cir. 2003).

In *Adu*, we held that "[t]he defendant's statement that he gave the government 'all they asked,' if true, does not satisfy the burden of proof" for the safety valve provisions. 82 F.3d at 124. More specifically, we held that the district court had not committed clear error because the defendant had "merely repeated what he had written to the probation officer" and "[t]he government challenged the defendant's claim." *Id.* (holding that a district court's decision is not clearly erroneous "[w]here the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure").

Likewise, a defendant does not meet the fifth criterion for safety valve treatment where the defendant "fails to give a full forthright account of his activities". *United States v. Sabir,* 117 F.3d 750, 751 (3d Cir. 1997); *see also Salgado,* 250 F.3d at 460 (stating that defendant's "abbreviated statements" did not meet the fifth safety valve requirement that a defendant fully disclose information about acts associated with the offense); *United States v. Maduka,* 104 F.3d 891, 894 (6th Cir. 1997) (holding that information provided by defendant was not complete enough to satisfy the

12

safety valve requirement because it failed to describe the involvement of others in the relevant conduct); *United States v. Scharon,* 187 F.3d 17 (1st Cir. 1999) (holding that defendant must provide information beyond facts related to the particular offense to satisfy safety valve requirements).

Here, the Defendant failed to prove that he satisfied the fifth criterion of the safety valve test. The meeting to which he refers was not, as the prosecutor correctly argued to the District Judge, a safety valve meeting. Its purpose was to determine whether the Defendant could testify about the involvement of one co-Defendant. That meeting did not cover, as required by the safety valve provision "all information and evidence the defendant has concerning the offense or offenses that were part of the same court of conduct."

The Defendant never met with the government to discuss the complete circumstances surrounding his involvement in the drug trade. He never scheduled such an interview. The Defendant here cannot satisfy the fifth criterion of the safety valve test by pointing to his brief meeting with the government wherein all he did was deny that an alleged co-Defendant was involved in the crimes. Other than that uneventful meeting, the government had no contact with the Defendant.

The district court had a sufficient basis for finding that the Defendant did not meet the fifth criterion for the safety valve adjustment. There was no error, let alone clear error, in its decision not to grant safety valve relief.

### Conclusion

For the foregoing reasons, we **AFFIRM** Timmer's conviction and the factual finding that he possessed a firearm in connection with his drug offense, we **REVERSE** Timmer's sentence and

Nos. 04-1697/04-1754
United States v. Rodriguez-Ruiz, et al.

**REMAND** for further sentencing, and we **AFFIRM** the sentence imposed on Rodriguez-Ruiz.