NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0469n.06

Case Nos. 21-4019/4081

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Nov 18, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JUSTIN MARTIN (21-4019); BRANDON SHERIDAN (21-4081), | ) | |
| | ) | |
| Defendants-Appellants. | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

COLE, Circuit Judge. Law enforcement recovered a myriad of firearms, drugs, cash, and other contraband during a search of 106 Lake Street in Akron, Ohio. Both defendants—Justin Martin and Brandon Sheridan—were present in the residence at the time of the search, found in separate rooms, both of which contained contraband. Following a jury trial, both Martin and Sheridan were convicted of possession of methamphetamine with the intent to distribute and possession of a firearm in furtherance of a drug trafficking crime, and both were sentenced based on the aggregate drug weight found in the Lake Street residence. Both defendants now appeal: Martin from his sentence and Sheridan from his conviction. Because Martin's argument regarding his sentencing based on acquitted conduct is squarely foreclosed by Sixth Circuit and Supreme Court precedent, and because the government provided sufficient evidence to establish Sheridan

constructively possessed methamphetamine and firearms, we AFFIRM Martin's sentence and Sheridan's conviction.

## I. BACKGROUND

### A. Conduct and Investigation

After receiving several drug complaints about 106 Lake Street in Akron, Ohio, the Narcotics Unit of the Akron police conducted an investigation of the house, including a controlled purchase of methamphetamine from the residence (the "Lake Street house"). Law enforcement then obtained a search warrant for the Lake Street house on January 9, 2018, which they executed in tandem with a SWAT team and Narcotics Detectives on January 10, 2018.

Upon entry, law enforcement searched the common areas and the three bedrooms, two of which are relevant here. Sheridan was found in the southeast bedroom, which contained a large amount of methamphetamine, multiple firearms, a box of 47 rounds of ammunition, $6,000 in cash, pills, Martin's wallet—including his Ohio driver's license and an additional $425 in cash— and Sheridan's driver's license and credit union membership card. Further investigation of the credit union card revealed that Sheridan had applied for bank accounts tied to the Lake Street house about a month prior to the search. Martin was found down the hall in the northeast bedroom. In the same room, law enforcement found, among other things, eight firearms, body armor, $700 in cash, paperwork with Martin's name on it, and about 103 grams of suspected—later confirmed— methamphetamine.

### B. Indictment and Conviction

The government indicted both Martin and Sheridan with possession of a controlled substance with the intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. The jury ultimately found both Martin and Sheridan guilty as to both counts. In

so doing, the jury rendered a special verdict as to the quantity of methamphetamine each defendant possessed with the intent to distribute, attributing less than 500 grams to Martin and more than 500 grams to Sheridan. Verdict Forms, R. 114, PageID 608, 611.

## C. Sentencing

For the drug charge, both Martin's and Sheridan's initial presentencing reports ("PSR") set their base offense level at 34, calculated using the aggregate drug weight of all the methamphetamine found during the Lake Street search, which was "just over a thousand grams of methamphetamine." Martin objected to the attribution of all the methamphetamine to him as relevant conduct, alleging that his base offense level should reflect only the amount he was convicted of possessing, which was less than 500 grams according to the jury's special verdict. In finding Martin and Sheridan to have "jointly undertaken criminal activity," the district court agreed with the government and probation office that all the methamphetamine found during the search of the Lake Street house constituted "relevant conduct" as to both defendants, thereby justifying a base offense level of 34.

Martin received a two-level enhancement due to the court's finding that he maintained a premises—the Lake Street house—for the purposes of distribution, bringing his total offense level to 36. A total offense level of 36 and Martin's criminal history resulted in a guideline imprisonment range of 210 to 262 months. The district court adopted the PSR and imposed a within-guidelines term of imprisonment of 220 months as to the drug charge plus the mandatory 60 months for the firearm charge, totaling 280 months.

As to Sheridan, a total offense level of 34 and his criminal history resulted in a guideline imprisonment range of 188 to 235 months. The district court adopted Sheridan's PSR without objection or change and imposed a within-guidelines term of imprisonment of 208 months for the

drug charge plus the mandatory 60 months for the firearm charge, totaling 268 months. Both defendants timely appealed, Martin from his sentence and Sheridan from his conviction.

## II. ANALYSIS

### A. Justin Martin

Martin challenges the reasonableness of his sentence due to the district court's use of "acquitted conduct" to enhance his offense level beyond what the jury's special verdict would support. Martin correctly notes that, had the district court considered only the amount of drugs he was convicted of possessing, his guidelines range would have been calculated from a base offense level of 24, rather than 34, resulting in a significantly lower sentence. According to Martin, consideration of all the drugs skewed the district court's guideline range calculation, and this acquitted conduct is an impermissible factor, so his sentence is both procedurally and substantively unreasonable. Because, as Martin concedes, this argument is foreclosed by Sixth Circuit and Supreme Court precedent, we affirm.

We review the reasonableness of a defendant's sentence for abuse of discretion. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "A district court's decision on the amount of [drugs] a defendant is to be held accountable for is a finding of fact which must be accepted by a court of appeals unless clearly erroneous." *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir. 1990). We can appreciate Martin's concerns about sentencing a defendant based on "the maximum quantity of drugs that can plausibly be found," as opposed to the quantity a defendant is "more likely than not *actually* responsible for," *Walton*, 908 F.2d at 1302 (emphasis in original). We mitigated this concern by raising the burden of proof to the preponderance of evidence when such a fact is "crucial to the determination of a defendant's guidelines base offense level"—as is the case for Martin. *See id.*; *see also United*

*States v. Jones*, 829 F.3d 476, 477 (6th Cir. 2016) (specifically applying the preponderance of the evidence standard to facts considered for a within-guidelines sentence).

As discussed, the jury specially convicted Martin of possession of less than 500 grams of methamphetamine. In finding that the methamphetamine in the other rooms of his house constituted "relevant conduct," Martin's sentence was fashioned according to a sentencing guidelines range that factored in all the methamphetamine recovered from the Lake Street house. Determining a defendant's "relevant conduct" is part and parcel with a district court's sentencing guidelines calculation, which goes to a sentence's procedural reasonableness. *See United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009). So long as the relevant conduct is supported by a preponderance of the evidence and the ultimate sentence does not exceed the statutory maximum, an enhancement based on such conduct is allowed. *United States v. White*, 551 F.3d 381, 384–85 (6th Cir. 2008) (en banc). And so long as the subsequent sentence is at or below the "statutory ceiling" as defined by the jury's verdict, consideration of relevant conduct does not abridge the right to jury trial. *United States v. Benson*, 591 F.3d 491, 503 (6th Cir. 2010) (quoting *White*, 551 F.3d at 385).

We cannot say the district court's attribution of all the methamphetamine discovered at the Lake Street house to both Martin and Sheridan is clearly erroneous. Martin does not challenge his possession of the Lake Street house, nor that the house was "maintain[ed] for the purposes of distributi[on]." He also submits that the southeast bedroom belonged to Sheridan. Law enforcement discovered Martin's personal information alongside methamphetamine, a drug scale, and firearms in what Martin agrees is his bedroom, which alone supports the jury's verdict. Because Martin's wallet and driver's license were found in another bedroom in Martin's house that contained over 900 grams of methamphetamine, as well as other cash and firearms scattered

around the rest of his house, the district court reasonably concluded that Martin and Sheridan were jointly trafficking drugs. In so finding, the district court reasonably attributed all the jointly trafficked methamphetamine to both defendants during sentencing, and doing so does not constitute clear error. Martin's resulting enhanced sentence—280 months—is below the statutory maximum penalty established by the jury's verdict—480 months—so his sentence is procedurally reasonable and therefore not an abuse of discretion. *See White*, 551 F.3d at 384–85.

As we have held before, "[i]n the absence of an inconsistent decision of the Supreme Court, this panel will not overrule the court's precedent upholding the application of the preponderance standard" to factual findings supporting sentencing enhancements. *Jones*, 829 F.3d at 477. As such, we affirm Martin's sentence.

## B. Brandon Sheridan

Sheridan avers that the evidence presented by the government is insufficient to support a finding that he possessed either firearms or methamphetamine and is therefore insufficient to support his conviction. We review such a challenge de novo. *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). We reverse a conviction only if, viewing the facts in the light most favorable to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. *United States v. Hill*, 167 F.3d 1055 (6th Cir. 1999).

### 1. Possession

Both of the statutes underlying Sheridan's conviction require possession, either of a firearm, *see* 18 U.S.C. § 924(a)(1)(C), or a controlled substance, *see* 21 U.S.C. § 841(a)(1). Possession can be actual or constructive, including joint possession over the same premises or contraband. *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022). Constructive possession, at issue for Sheridan, requires that the evidence "indicate 'ownership, dominion, or control over

the contraband itself or the premises . . . in which the contraband is concealed.'" *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (quoting *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983) (citations omitted)). "A jury is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (cleaned up). Put differently, constructive possession of a premises is sufficient to establish constructive possession of the items inside. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (specifically referring to firearms). Per a related sentencing guideline, a "premises" is defined as "a building, room, or enclosure." USSG § 2D1.1 cmt. n. 17. Regarding drugs, while physical proximity to or mere presence in an area near drugs is not sufficient, *id.*, minimal evidence, including circumstantial evidence alone, can support a criminal conviction. *United States v. Walker*, 734 F.3d 451, 456 (6th Cir. 2013).

Law enforcement found Sheridan in a bedroom that contained more than 500 grams of methamphetamine, multiple loaded firearms, $6,000 cash, his driver's license, and a credit union card in his name registered to the Lake Street house. Put together, Sheridan's presence in and unlimited access to the southeast bedroom, the bank accounts in his name tied to the Lake Street house, and Martin's assertion that the southeast bedroom was Sheridan's indicate Sheridan's "ownership, dominion, or control over" the southeast bedroom. *See White*, 932 F.2d at 589. The evidence could reasonably suggest much more than Sheridan's mere access to the contraband, and it "need not exclude every possible hypothesis except that of guilt." *United States v. Jordan*, 544 F.3d 656, 670 (6th Cir. 2008) (citations omitted). At a minimum, therefore, a reasonable juror could find that Sheridan constructively possessed the southeast bedroom, and therefore the items

within, which suffices for his conviction regardless of possession over the rest of the house and its contraband.[1]

That neither the drugs nor the firearms were found on his person is not dispositive. Indeed, to find otherwise would collapse the well-established demarcation between actual and constructive possession. *See United States v. Barnett*, 398 F.3d 516, 519 (6th Cir. 2005) ("The law recognizes two kinds of possession, actual possession and constructive possession. Either one of these, if proved by the Government, is enough to convict."). Further, Sheridan points to Martin's joint occupancy of, and Martin's family's presence in, the Lake Street house as negating his own possession over the drugs and firearms found inside. What this argument misses is that constructive joint possession allows for multiple people to possess the same residence, and therefore contraband, at the same time. *United States v. Craven*, 478 F.2d 1329, 1333 (holding that "[p]ossession . . . need not be exclusive"); *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (allowing joint possession of a firearm). Martin wordlessly acknowledges that such joint constructive possession applies to him and Sheridan: he concedes his possession of the Lake Street house and that the House was "maintain[ed] for the purposes of distributi[on]," and asserts that the southeast bedroom belonged to Sheridan. *See* Martin Appellant Br. 8, 9, 14. As such, the evidence could support a finding of joint constructive possession over the entire Lake Street house, and therefore all of the contraband, or possession over just the southeast bedroom and its contents. Either is sufficient.

---

[1] This is not to say that no reasonable juror could find that Sheridan constructively possessed the entire house. This is just to say that finding is not required based on the contraband found in the southeast bedroom.

## 2. *Other Elements*

Having identified evidence sufficient for a reasonable juror to find Sheridan possessed both firearms and drugs—the challenged aspect of his conviction—we move on to briefly discuss the other elements of each crime. The firearm(s) possessed must be used "in furtherance of" a drug trafficking crime, understood to mean advancing, promoting, or facilitating the crime. *United States v. Mackey*, 265 F.3d 457, 460–61 (6th Cir. 2001). This requires a "specific nexus between the [firearm] and the crime charged," considering whether the firearm was loaded, the type of drug activity conducted, and the firearm's location, including if the firearm was "quickly and easily available for use," *id.*, such as to defend drugs from or deter theft, *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004). To sustain an § 841(a)(1) conviction, the drugs must be possessed "with the intent to distribute," which can be found through circumstantial evidence such as a large quantity. *See United States v. Garth*, 965 F.3d 493, 496 (6th Cir. 2020) (citing *United States v. Vincent*, 20 F.3d 229, 233 (6th Cir. 1994)).

Given the intersecting nature of these statutes, the evidence is similarly overlapping. Relevantly, the southeast bedroom contained loaded firearms; close to 1,000 grams of methamphetamine, valued at $40,000; and $6,000 cash. These pieces of evidence reasonably support both the "intent to distribute" and "in furtherance of" elements. As to "intent to distribute," this quantity of methamphetamine is consistent with "distribution quantities," from which intent to distribute can be inferred. *See Garth*, 965 F.3d at 496. Similarly, "large sums of cash are indicative of the drug trade." *United States v. Brooks*, 594 F.3d 488, 495 (6th Cir. 2010). Outside of the southeast bedroom, the house contained "miscellaneous security cameras," which has been found to be consistent with drug trafficking. Lastly, firearms are a recognized drug-trafficking tool. *Wheaton*, 517 F.3d at 350. Based on this evidence, drawing all inferences in favor of the

jury's verdict, we cannot say that no rational trier of fact could find Sheridan guilty of possession with the intent to distribute.

Having evaluated his drug trafficking conviction, upon which the firearm possession charge is premised, the next question is if the firearms were possessed "in furtherance of" that offense. Assuming based on the above that Sheridan constructively possessed at least one firearm, a reasonable juror could find as such. The corollary firearm sentencing enhancement for drug trafficking convictions instructs that "[i]f the government establishes that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense." *Wheaton*, 517 F.3d at 367 (internal quotation marks omitted). A juror could reasonably conclude that Sheridan possessed the loaded and easily accessible firearms to facilitate the drug trafficking activities occurring in the same residence, such as to provide defense or deterrence. *See Mackey*, 265 F.3d at 460–61; *Couch*, 367 F.3d at 561. Sheridan's argument that the firearms belong to Martin is insufficient to overcome the evidence that connects the firearms to the distribution quantity of drugs and cash in the southeast bedroom.

While the evidence presented at trial may not "exclude every possible hypothesis except that of guilt," *Jordan*, 544 F.3d at 670, a rational trier of fact could find Sheridan guilty of possession of methamphetamine with the intent to distribute and possession of a firearm in furtherance of said distribution. Therefore, we affirm Sheridan's conviction.

### III. CONCLUSION

For the foregoing reasons, we affirm Martin's sentence and Sheridan's conviction.