NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0114n.06

Case No. 24-5162

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | ) | Feb 27, 2025 |
| UNITED STATES OF AMERICA, | ) | KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| DUSTIN L. TRUETT, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: COLE, WHITE, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In December 2020, law enforcement officers executed two search warrants at Dustin Truett's residence. While executing the first warrant, which permitted them to look for evidence tied to a nearby suspected burglary, officers observed firearms and suspected illicit drugs in plain view. Based on this evidence and the officers' knowledge that Truett had a prior felony conviction, the officers obtained the second search warrant. During the second search, officers seized a large amount of cash, several firearms and related accessories, ammunition, a variety of drugs, and assorted other items. A grand jury charged Truett with drug trafficking and firearms-related offenses. Truett moved to suppress evidence seized during the execution of both search warrants and requested a *Franks* hearing as to the first warrant, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied each of these requests, and Truett subsequently pleaded guilty to all three counts of the indictment. In his guilty plea, Truett reserved

the right to appeal the denial of his motions to suppress and request for a *Franks* hearing. Truett filed this timely appeal. For the following reasons, we AFFIRM.

## I.

### A. Factual Background

On December 10, 2020, law enforcement officers from the Hickman County Sheriff's Office ("Sheriff's Office") executed a search warrant ("the first search warrant") at Truett's home based on information they had received and evidentiary leads they had developed during their investigation of a nearby suspected burglary. The day before, Hickman County resident P.P. had recognized an antique oil lamp on Facebook Marketplace that was "identical" to a lamp in her deceased parents' home. A person named Travis Hutchinson had posted the lamp for sale for $300. P.P., who had inherited her parents' house after they died, feared that someone had broken into the now-unoccupied home and stolen the lamp.

The next morning, P.P. contacted the Sheriff's Office, explained her suspicions, and asked for someone to accompany her to her deceased parents' house. Sergeant Jonathan Aydelott met P.P. at the house, where P.P. found the "rare" antique oil lamp abandoned in the front yard, with an angel figurine missing. P.P. identified the lamp as the same antique lamp she knew from her parents' home and the one she saw on Facebook Marketplace. As P.P. and Aydelott entered the parents' house, they discovered a broken window, and P.P. identified additional items missing from the house. Aydelott also noted a severed cord where the antique lamp once hung. Outside the home, Aydelott noticed a trail leading from the broken window and "through the woods that led in the direction of" Truett's home, which was about 150 yards away.[1]

---

[1] Truett resided at 7419 Highway 230 East Lyles, Hickman County, Tennessee, 37098.

Aydelott contacted Detective Scott Jones, who began investigating the suspected burglary. Jones and others from the Sheriff's Office had executed warrants at Truett's home in February and June 2020, during which they captured body camera footage of the home's interior. When Jones viewed Hutchinson's Facebook Marketplace photo of the lamp, he noticed that the background in the photo looked like Truett's living room, where he had executed the previous warrants. Jones then reviewed body camera footage from the June search and confirmed the resemblance between the Facebook Marketplace photo and the footage of Truett's living room; he noted that the door, the flooring, a grey stool, and a brown coat in the Facebook photo matched the same items in the body camera footage. Detective Daniel Roberts, who was also present during the June 2020 search, agreed.

The Sheriff's Office knew that Hutchinson was an associate of Truett's who was at Truett's house during the June 2020 search. Jones viewed Hutchinson's profile picture linked to the Facebook Marketplace posting and identified him as the same Travis Hutchinson he had encountered at Truett's home the preceding June.

*The First Search Warrant.* Detective Jones described his search of P.P.'s property and the details discussed above in an affidavit accompanying a warrant request. Jones sought the warrant to search Truett's home "to confirm the origin of the photograph, as well as to find evidence linking Travis Hutchinson to the Truett residence and any evidence of ownership or control over the premises." (R. 21-1, PageID 79). That same day, a magistrate judge granted the warrant, allowing officers to search Truett's house for "any evidence of identity or ownership of the premises," "visual corroboration" of the Facebook photo's background, "any evidence that links Travis Hutchinson to the premises," and "any evidence or items which would be used to conceal the forgoing or prevent its discovery." (R. 21-1, PageID 75). When the detectives arrived at Truett's

house to execute the warrant, they saw firearms in a truck parked behind the house. Inside the house, they took additional photos to confirm that the living room matched the Facebook photo. The detectives also observed drugs, drug paraphernalia, and firearms in plain view.

*The Second Search Warrant.* Detective Brady Cartwright sought another search warrant that same night ("the second search warrant") to recover the firearms and drugs seen in plain view at Truett's home, as well as items still missing from P.P.'s property.[2] Relevant here, during the second search, detectives seized the following evidence: a loaded AR-15 pistol, a 12-gauge shotgun, two .22 caliber bolt action rifles, a 20-gauge bolt action shotgun, a loaded .17 caliber rifle with a scope, various ammunition, over 300 grams of methamphetamine, over 1,600 grams of marijuana, oxycodone pills, drug paraphernalia, and around $34,000 in U.S. currency.

## B. Procedural Background

In September 2021, a federal grand jury returned an indictment charging Truett with: possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1).[3] Truett moved to suppress evidence seized from both search warrants and requested a *Franks* hearing on the first warrant. The district court denied Truett's motions in full. Truett subsequently pleaded guilty to all three counts of the indictment, and the district court sentenced him to 180 months' imprisonment. Truett

---

[2] The second search warrant noted that P.P.'s parents' residence was also missing an antique cedarwood chest of drawers, glass ceiling fixtures, the porcelain figurine from the lamp, two metal antique milk cans, a radio flyer wagon, and a recliner chair, valued in total at around $1,600.

[3] A Superseding Indictment followed in August 2022, but the charges remained the same.

reserved the right to appeal the district court's denial of his motions to suppress. He filed this timely appeal.

## II.  STANDARD OF REVIEW

We review the district court's legal conclusions for denying a motion to suppress de novo and its findings of fact for clear error. *United States v. Marsh*, 95 F.4th 464, 468 (6th Cir. 2024) (citing *United States v. May-Shaw*, 955 F.3d 563, 566 (6th Cir. 2020)). And we evaluate a district court's denial of a *Franks* hearing under the same standard. *United States v. Bateman*, 945 F.3d 997, 1007–08 (6th Cir. 2019).

## III.  ANALYSIS

### A. *Franks* **Hearing**

Truett argues that the district court erred by denying him a *Franks* hearing. But Truett makes no effort to develop this argument on appeal, rendering it forfeited. *See, e.g., Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022). And even if not forfeited, the argument has no merit.

In a *Franks* hearing, a court determines whether a law enforcement officer made any deliberately false statement(s) or statement(s) in reckless disregard of the truth to support a warrant request, and if so, whether the warrant still contained sufficient information to support a finding of probable cause without the offending statement(s). *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks*, 438 U.S. at 171). The decision to grant an evidentiary hearing is within the "sound discretion of the district court." *Bateman*, 945 F.3d at 1008 (quoting *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)). A defendant requesting a *Franks* hearing must: "'1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the

affidavit; and 2) prove[] that the false statement or material omission [was] necessary to the probable cause finding in the affidavit.'" *Id.* (quoting *Young*, 847 F.3d at 348–49) (first two alterations in original). A defendant's assertions of deliberate falsehood or reckless disregard for the truth must be "accompanied by an offer of proof" that points to "the portion of the warrant affidavit that is claimed to be false," and the allegations "should be accompanied by a statement of supporting reasons." *Franks*, 438 U.S. at 171. Acceptable offers of proof typically come in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Id.*

Truett generally asserts that Jones's "affidavit contained false statements and/or statements made with a reckless disregard for the truth" and that "[a]bsent those [false] statements, the affidavit fails to establish probable cause." (ECF 11, Appellant Br., Page 4–5). But, in his opening brief, Truett does not identify which statements from the affidavit were purportedly false. He also points to no offer of proof that he made in the district court from which we might discern whether the district court improperly denied him a *Franks* hearing. Instead, Truett merges his *Franks*-hearing argument with his argument that the district court erred in denying his motion to suppress evidence resulting from the first search warrant. In doing so, he has woefully underdeveloped any argument that he deserves a *Franks* hearing. It is insufficient "'for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Buetenmiller*, 53 F.4th at 946 (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). And we consider arguments forfeited where "'[i]ssues [are] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.'" *Id.* That is the case here with respect to Truett's appeal of the district court's denial of a *Franks* hearing.

Even if Truett had not forfeited this argument, his challenge to the district court's denial of a *Franks* hearing still fails. In the district court, Truett specified that Jones's affidavit statement

"alleging that a certain photograph was taken in the premises to be searched is false and amounts to a reckless disregard of the truth." (R. 19, PageID 43). But the record reveals that Truett made no offer of proof in the district court to support this assertion. *Franks*, 438 U.S. at 171. Nor did Truett explain why Jones's purported false statement was necessary to the probable cause finding—or stated differently, why the remaining information in the affidavit was insufficient to support a finding of probable cause. For these reasons, we find no fault in the district court's decision to deny a *Franks* hearing.

## B. Motions to Suppress

We, likewise, see no reason to set aside the district court's denial of Truett's motions to suppress.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists where "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). Probable cause does not require certainty or a finding by the preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983). Rather, the issuing magistrate must "simply [] make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that [] evidence of a crime will be found in a particular place." *Id.* at 238. To uphold the adequacy of the search-warrant affidavit, "[t]here must be a fair probability that the specific place that officers want to

search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (citing U.S. Const. amend. IV).

While we review the district court's decision de novo, our review of the initial probable cause finding is more deferential. *See United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018). That is, a judicial officer who issues a warrant "'should be paid great deference.'" *Id.* (quoting *Gates*, 462 U.S. at 236). Here, we are tasked only with ensuring that the issuing magistrate had a "substantial basis for . . . concluding that probable cause existed" based on the "totality of the circumstances." *Gates*, 462 U.S. at 238–39 (cleaned up). And we will uphold the denial of a motion to suppress "if the district court's conclusion can be justified for any reason." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).

Truett argues that there was no probable cause to justify the first search warrant, so the evidence seized from its execution should have been suppressed. And the second search warrant was unlawful because it relied on evidence obtained from the first warrant. In short, because the first search was unlawful, evidence seized during the second one should have been suppressed as fruit of the poisonous tree. Neither of these arguments has merit.

*1. First Search Warrant*

We agree with the district court that the totality of the circumstances set forth in the affidavit sufficiently established probable cause. In particular, "P.P.'s positive identification of the lamp from her parents' home as the one depicted in Hutchinson's Facebook post; the trail from the broken window [through the woods leading in the direction of] Truett's residence 150 yards away; and Hutchinson's known affiliation with Dustin Truett" provided sufficient grounds to believe that evidence of Tennessee theft of property might be found at Truett's house. (R. 22,

PageID 103). These facts provided a substantial basis for the magistrate to find probable cause and grant the first search warrant.

Resisting this conclusion, Truett argues that the first search warrant affidavit was inadequate to demonstrate that the searched-for items would "be found in the place to be searched." (ECF 11, Appellant Br., Page 6–7). For support, Truett points out that the Sheriff's Office had already found and taken possession of the oil lamp before obtaining the warrant. And "[t]here exist[e]d no information that any other allegedly stolen items" would be at his residence. (ECF 11, Appellant Br., Page 7). Truett also faults the affidavit for failing to include information about when the Facebook marketplace photo was taken. And he insists that the Facebook Marketplace listing "was not associated" with Truett or his residence, since it was Hutchinson who made the posting. (ECF 11, Appellant Br., Page 7).

None of Truett's arguments undermine the sufficiency of the warrant affidavit. First, the Sheriff's Office did not seek the first search warrant to recover the oil lamp itself; Aydelott and P.P. recovered the lamp in the front yard of her parents' house. Instead, Jones sought a warrant to search Truett's home for:

> Visual corroboration of the background depicted in a photograph of a stolen oil lamp posted on Facebook Marketplace, said oil lamp stolen from a residence on Hwy 230 between Coke Circle and Lick Creek Trail[4]; and any evidence of identity or ownership of the premises to be searched; and any evidence that links Travis Hutchinson to the premises to be searched; and any evidence or items which would be used to conceal the foregoing or prevent its discovery.

(R. 21-1, PageID 77). The officers therefore sought evidence of the oil lamp's theft, not the oil lamp itself. And the magistrate granted the warrant on those grounds.

---

[4] Where the language in the warrant specifies "said oil lamp stolen from a residence on Hwy 230 between Coke Circle and Lick Creek Trail," this phrase appears to modify the language directly preceding it that states "[v]isual corroboration of the background depicted in a photograph of a stolen oil lamp posted on Facebook Marketplace," rather than describe a distinct item to be seized. (R. 21-1, PageID 79).

Second, Hutchinson's Facebook post soliciting buyers for the stolen lamp provided the officers with a promising lead and established a nexus between Truett's residence and the evidence of theft that the officers sought. Jones was able to link the Facebook photograph to Truett's home because he recognized the background in the photo from his prior search of the house. *See e.g., United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) ("The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found [].") (internal citations omitted); *see also United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004). Officers were also able to infer that Hutchinson had access to Truett's home because they had seen him there during one of two searches of the residence earlier in the year. Moreover, the broken window, the trail, and the proximity between Truett's home and P.P.'s parents' home strengthened the link between the property theft and Truett's home. As such, the warrant established a "connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit." *C.f., United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005).

Third, Truett's indirect concession that his "known associate" made the Facebook posting supports rather than detracts from the finding of probable cause in that it corroborates Jones's memory of seeing Hutchinson inside Truett's home. In turn, Hutchinson's prior access to Truett's house made his posting of the antique lamp inside the house more likely. Lastly, Truett does not explain why the lack of a timeline for the Facebook photo negates probable cause. And any attempt to invalidate the warrant on staleness grounds would be undermined by the visible trail from the broken window at P.P.'s parents' house suggesting that the suspected burglary was relatively recent. Therefore, the totality of the circumstances provided the magistrate with a substantial basis

to conclude there was probable cause to believe that Truett's home would contain evidence of the burglary.

*Good-Faith Exception.* Even without a finding of probable cause, the evidence from the first search warrant would still be admissible under the good-faith exception established in *United States v. Leon*, 468 U.S. 897, 922 (1984). *Leon's* good-faith exception extends where there is a "minimally sufficient nexus" "'between the criminal activity at issue and the place to be searched.'" *United States v. Reed*, 993 F.3d 441, 450–51 (6th Cir. 2021) (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)). That minimally sufficient nexus is evident here, where P.P. positively identified the stolen lamp; officers independently recognized the photo's background as the interior of Truett's home; and Aydelott observed a trail leading from the site of the suspected burglary in the direction of Truett's house. *See, e.g., United States v. Carpenter*, 360 F.3d 591, 593 (6th Cir. 2004) (en banc) (finding sufficient nexus where affidavit described a "road connecting" marijuana field to nearby home to be searched). Thus, the evidence from the first search warrant falls under the good-faith exception, and the district court rightly dismissed Truett's motion to dismiss.

2. *Second Search Warrant*

Truett does not challenge the second search warrant on any grounds other than the purported deficiency of the first warrant. Since the first search warrant was supported by probable cause, the police officers lawfully observed the contraband at Truett's house that justified the second search warrant. As Truett does not challenge the second warrant on any other grounds, the district court did not err in denying Truett's motion to suppress.

## IV.     CONCLUSION

For these reasons, we AFFIRM the district court's denial of Truett's motions to suppress and request for a *Franks* hearing.