NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0045n.06

Case No. 25-5157

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 23, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| ANDRE BLUE, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, NALBANDIAN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** A jury convicted Andre Blue on four counts of possession of a firearm in furtherance of a drug-trafficking crime, among other offenses. He appeals these four convictions, arguing that the government presented insufficient evidence to sustain them. Viewing the evidence in the light most favorable to the government, as we must, we affirm his convictions.

**I.**

In 2022, the Shelby County Multi-Agency Gang Unit ("MGU") received information that Andre Blue, a felon, was selling fentanyl out of a home on Highland Street in Memphis, Tennessee. Through surveillance, investigators observed heavy vehicle traffic around the Highland residence. The MGU oversaw several purchases of fentanyl at this location.

Investigators later learned that Blue was living with his girlfriend, Laquita Bratcher, at her apartment in Memphis. They conducted surveillance at this location and observed heavy vehicle traffic in and around the apartment complex. On multiple occasions, Blue exited Bratcher's

apartment, engaged in hand-to-hand transactions with the occupants of certain vehicles, and then returned to the apartment. Investigators also observed Blue driving from Bratcher's apartment to the residence on Highland Street. Based on this activity, the MGU suspected that Blue stored narcotics and drug-trafficking proceeds inside Bratcher's apartment.

The MGU executed a search warrant at Bratcher's apartment, where they recovered five plastic baggies from a toilet. One baggie contained methamphetamine, and the others contained cocaine. In the primary bedroom, investigators found a digital scale, two baggies of cocaine, three pistols, and several rounds of ammunition. Down the hallway, in a child's bedroom closet, investigators located an AR-15.

Following this search, investigators took Blue into custody. Blue claimed sole ownership of the recovered firearms and narcotics. During a second search of Bratcher's apartment, investigators found $2,100 in the pocket of a sweatshirt.

The investigation of Blue's activities continued into 2023. Through surveillance and other means, the MGU suspected that Blue continued to sell fentanyl at the Highland Street residence. Meanwhile, Blue and Bratcher had moved to a new house, and investigators believed that Blue was storing narcotics and drug-trafficking proceeds at this new location.

Soon after, investigators obtained a search warrant for Blue's new residence. During the search, they found a digital scale with white residue, several baggies of marijuana, and a 9-mm pistol.

A grand jury charged Blue with ten offenses: five counts of possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession with the intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and four counts of possession of a firearm in furtherance of drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

The case proceeded to trial. At the close of the government's case, Blue moved for a judgment of acquittal on the four counts of possession of a firearm in furtherance of a drug-trafficking crime. The district court denied the motion.

The jury found Blue guilty of possessing methamphetamine with the intent to distribute and guilty on all four counts of possession of a firearm in furtherance of a drug-trafficking crime. The jury also convicted him on four of the five counts of possession of a firearm as a convicted felon.

Blue now appeals. He argues that the evidence was insufficient for the jury to convict him of any of the charges of possession of a firearm in furtherance of a drug-trafficking crime.

## II.

We review de novo a district court's denial of a motion for judgment of acquittal based on insufficient evidence. *United States v. Maya*, 966 F.3d 493, 498 (6th Cir. 2020). In doing so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quotation omitted). This is "a demanding legal standard." *Maya*, 966 F.3d at 498 (quotation omitted). Our "limited review does not intrude on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Musacchio*, 577 U.S. at 243 (quotation omitted). Circumstantial evidence alone can "defeat a sufficiency challenge." *United States v. Brooks*, 987 F.3d 593, 603 (6th Cir. 2021) (quotation omitted).

## III.

To evaluate Blue's sufficiency-of-the-evidence claim, we must first identify the "essential elements" of his convictions under 18 U.S.C. § 924(c). *See Musacchio*, 577 U.S. at 243. Under

the statute, a person commits a crime if he "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or . . ., in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). This statute thus covers two offenses: (1) a person who "possesses" a firearm "in furtherance of" a crime of violence or a drug-trafficking offense; and (2) a person who "uses or carries" a firearm "during and in relation to" such crimes. *Id.*; *see also Maya*, 966 F.3d at 499.

Blue's § 924(c) convictions were possession-in-furtherance offenses. So the government needed to prove that Blue: (1) possessed a firearm; (2) committed a drug-trafficking crime; and (3) possessed the firearm in furtherance of that crime. 18 U.S.C. § 924(c)(1)(A); *United States v. Jordan*, 100 F.4th 714, 726 (6th Cir. 2024). Blue does not dispute that he possessed the guns found in Bratcher's apartment. Nor does he dispute that he committed a drug-trafficking offense. Instead, his challenge focuses on whether the government proved that he possessed the guns in furtherance of his methamphetamine-trafficking offense.

A defendant possesses a gun in furtherance of a drug-trafficking crime if the firearm "promote[s] or facilitate[s] the crime." *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). In other words, there must be a "nexus between the gun and the crime charged." *Id.* at 462. For example, if "a drug dealer owns a gun to protect the drugs, the proceeds of drug sales, or the dealer himself, that possession-for-protection purpose will facilitate the crime." *Maya*, 966 F.3d at 500 (citation modified). On the other hand, a defendant does not violate the statute if he possesses "the gun for an innocent purpose—such as for hunting or as a wall-mounted antique." *Id.* (citation modified).

Because "[i]n most cases, a defendant will not confess to possessing the firearm to facilitate a drug crime," the government must generally rely on "circumstantial evidence to establish this

illicit purpose." *Id.* But "[t]he mere fact that a gun was located at the same place as a drug crime does not—by itself—suffice to show the required purpose to aid the crime." *Id.* at 501. Instead, courts look to a "non-exclusive list of six factors" to help "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *United States v. Brown*, 732 F.3d 569, 576 (6th Cir. 2013) (citation modified). Those factors are: (1) whether the gun was "strategically located so as to be quickly and easily available for use during a drug transaction"; (2) whether "the gun was loaded"; (3) "the type of weapon"; (4) "the legality of the weapon's possession"; (5) "the type of drug activity conducted"; and (6) "the time and circumstances under which the firearm was found." *Id.* at 576–77 (citation modified). The central question in our "holistic analysis" is "whether a jury could rationally find that the defendant possessed the gun to aid the drug crime." *Maya*, 966 F.3d at 503.

The government presented sufficient evidence for a jury to rationally find Blue guilty of possessing the firearms in furtherance of his methamphetamine offense. We address each factor below.

**A.**

*Strategic location.* Bratcher testified that she and Blue slept in the primary bedroom of her apartment. And they were in bed sleeping when the MGU executed the search warrant. Investigators found three guns in the primary bedroom: one .45-caliber pistol on the bed and a .45-caliber pistol and a 9-mm pistol on the floor near the bed. These guns were within arm's reach of where Blue was sleeping. Thus, he had quick and easy access to the firearms. They were also close to the methamphetamine that investigators found in the primary bathroom. This bathroom is accessible only through the primary bedroom. A jury could "reasonably infer that firearms which are strategically located so as to provide defense or deterrence in furtherance of the drug

trafficking are used in furtherance of a drug trafficking crime." *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (citation modified); *see also United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (a gun was "strategically" located when placed on top of an armoire outside the closet where the drugs were found (quotation omitted)).

The fourth gun, a loaded AR-15, was found unsecured on a shelf in a child's bedroom closet. The child's bedroom was down the hallway from where the narcotics were found. One investigator testified that it is atypical for a gun owner to have an unsecured gun in a child's closet. Based on the evidence, a factfinder could rationally determine that an unsecured firearm stored in a child's closet—down the hall from where the narcotics were found—is an easily accessible location. *See Brown*, 732 F.3d at 576–77; *Swafford*, 385 F.3d at 1027–29.

*Whether the gun was loaded.* Blue had three loaded guns in the apartment. A Smith & Wesson .45-caliber pistol was loaded with seven rounds of ammunition, a Glock 30 .45-caliber pistol was loaded with eleven rounds, and the AR-15 was loaded with "about a hundred" rounds. R. 151, PageID 952. The 9-mm pistol was unloaded.

*Type of weapon.* Investigators found two .45-caliber pistols, one 9-mm pistol, and one AR-15 in the apartment. Two investigators testified that it was common for people who deal in narcotics to possess firearms to protect themselves and their product. A .45-caliber handgun "is easily transported or concealed on the body, making it more likely to be used in furtherance of a drug crime." *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012) (citation modified). A 9-mm pistol is also "often used in drug trafficking." *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir. 2003) (quotation omitted). And an AR-15 is a high-powered firearm and not the type of weapon that "suggest[s] an innocent purpose, such as hunting or antique collecting." *United States v. Stafford*, 232 F. App'x 522, 524 (6th Cir. 2007).

*Legality of possession.*  Blue was a felon at the time he possessed the firearms.  Thus, it was illegal for him to possess the firearms.  Not only that, two of the guns had been reported stolen.

*Type of drug activity.*  Law enforcement observed Blue making hand-to-hand transactions in the parking lot of Bratcher's apartment complex and outside the house on Highland Street.  "In hand-to-hand transactions, the possession of a gun is meaningful: those are the types of exchanges in which dealers most need a firearm."  *United States v. Ellis*, No. 24-5283, 2025 WL 1081760, at *3 (6th Cir. Apr. 10, 2025).

*Time and circumstances.*  Under the last factor, we consider the time and the circumstances under which the firearm was found.  Investigators recovered the guns during the same search in which they located the methamphetamine.

**B.**

In response, Blue argues that the government presented no evidence "exclud[ing] the possibility" that he possessed the firearms for personal security.  D. 30 at p.13.  But the government's evidence need not remove every possible pathway to a not-guilty verdict.  *See United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." (quotation omitted)).  Viewing the evidence holistically, a rational jury could find that Blue possessed the guns in furtherance of drug trafficking.  A jury could reasonably infer that Blue possessed the guns to safeguard the narcotics and thousands of dollars in cash stored in the apartment or to protect himself during drug transactions.

**IV.**

For the reasons above, we **AFFIRM** the district court's judgment.